# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**OLIVIA ROBERTSON, LENG VANG, TIMOTHY BATES, ASHLEY COLLINS**, and **JUSTIN KANDAH** on behalf of themselves and other persons similarly situated, known and unknown,

      Plaintiffs,

v.

**BREAKTHROUGH TOWING, LLC, MAGIC TOWING, LLC** (formerly Breakthrough Towing, LLC), **MICHAEL DICKERSON** (aka Mike Jones), individually and as owner/resident agent of Breakthrough Towing and Magic Towing, **CVS PHARMACY #8137, CVS CAREMARK CORPORATION, McDONALD'S #20757, McDONALD'S CORPORATION, MIDTOWN LIQUOR & DELI, THE CITY OF DETROIT, THE CITY OF HAMTRAMCK, CITY OF HAMTRMACK POLICE DEPARTMENT JOHN DOES**, and **CITY OF DETROIT POLICE DEPARTMENT JOHN DOES**,

      Defendants.

**CASE NO. 19-10266**

**HON. AVERN COHN**

**PLAINTIFFS' RESPONSE TO DEFENDANT HAMTRAMCK'S MOTION TO DISMISS (ECF #22)**

## <u>AVERMENTS IN PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

Defendants Breakthrough Towing, LLC, as well as its alter-ego Magic Towing, are towing companies owned and operated by Defendant Michael Dickerson that illegally tow cars from Hamtramck.  Defendants Breakthrough Towing and Magic Towing routinely tow legally parked vehicles without permission of the vehicle's owner and without direction or permission from the private lot owner from which the vehicle is towed, R 4, ID 64. This rogue towing occurs at various parking lots in Hamtramck, R 4, ID 64.  The illegal, exploitative, and predatory towing is routinely done in violation of Michigan towing statutes and because of the lack of a proper contract with Hamtramck. R 4, ID 64.

Defendant routinely failed to report the impoundments to the appropriate state authorities, R 4, ID 65.  Defendant Breakthrough and Dickerson arbitrarily charged excessive fees to car owners as a prerequisite for judicial review of the impoundment and/or associated costs, R 4, ID 65.

The illegal practices were so systemic and wide spread that they were the subject of numerous reports, investigations and news stories.  R 4, ID 67. Hamtramck aided Breakthrough's illegal practices, R 4, ID 68.  Defendant's agents received kickbacks from Breakthrough to allow it to illegally tow vehicles, R 4, ID

1

69.     Hamtramck continues to allow Dickerson and Magic Towing, fka Breakthrough Towing, to illegally tow cars inside Hamtramck, R 4, ID 70.

Hamtramck's agents also allowed Breakthrough to impound Plaintiff Robertson's vehicle although there was no notice of towing as required by Michigan law, and although she arrived on the scene before the car was removed or even hooked to the tow truck in violation of Michigan Law.  Defendant's agents then prevented Robertson from taking possession of her car.  Defendants agents told Robertson that, despite the lack of proper notice and although she was on the scene before the car was even hooked to the tow truck,  the car was required to be towed to the Hamtramck Police Department (HPD), R 4, ID 71-72.

## STANDARD OF REVIEW

"[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Although the

plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. In reviewing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). FRCP 8(a)(2) requires only "a short and plain statement of the claim showing the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

## **ARGUMENT**

I. DEFENDANT HAMTRAMCK IS NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE IT IS A MUNICIPALITY.

Defendant Hamtramck claims that it is entitled to qualified immunity against Plaintiffs § 1983 claims. Apparently, Defendant does not understand that qualified immunity does not apply to municipalities. The Supreme Court long ago held that municipalities are not entitled to qualified immunity:

> Our rejection of a construction of § 1983 that would accord municipalities a qualified immunity for their good-faith constitutional

3

violations is compelled both by the legislative purpose in enacting the statute and by considerations of public policy.

*Owen v Independence*, 445 US 622, 650 (1980).

## II.  PLAINTIFF ROBERTSON AND THE PROSPECTIVE CLASS MEMBERS PLED VIABLE PROCEDURAL DUE PROCESS CLAIMS.

Defendant Hamtramck moved to dismiss Plaintiffs' complaint, claiming that Plaintiffs' claims are based on technical violation of the Michigan Vehicle Code, and that "a violation of a right created and recognized only under state law is not actionable under § 1983".  In support of this contention, Defendant cites numerous failure-to-protect-substantive-due-process cases, and one substantive due process claim brought for failure to allow a phone call after arrest, *Harril v.  Blount*, 55 F.3d 1123 (CA 6 1995).  Defendant even goes so far as to cite the substantive due process "shocks-the-conscious" standard, R-22, ID 424-25.

Apparently, Defendant does not understand the difference between a substantive due process claim and a procedural due process claim.  Plaintiffs have brought a procedural due process claim based on a taking of property protected by the Due Process Clause – their vehicles – without any predeprivation notice or hearing, and because they were denied any post deprivation remedy.  R 4, ID 40-49.  The Michigan Vehicle Code is the statute which provides the process due when vehicles are impounded.

### A.  The Michigan Vehicle Code.

MCL 257.252a governs when a car can be taken into custody (when it is by law deemed "abandoned"), defines when a car is deemed "abandoned" for the

purposes of the statute, governs the penalties for abandoning a car, and the notice that must be provided to the individual whose car was taken into custody.  It also governs the duties of the police agency which has jurisdiction over location of the car taken into custody.  Lastly, it governs the procedures for challenging the lawfullness of the custody and the reasonableness of expenses charged for towing and storage, as well as bond requirements.

Subsection (1) makes it a civil infraction to abandon a vehicle.  The last titled owner is liable for a civil fine.  Subsection(2) defines "abandoned".  It provides in relevant part:

> As used in this section and sections 252b through 252l, "abandoned vehicle" means any of the following:
>  (a) A vehicle that has remained on private property without the consent of the owner.

If a car is abandoned under subsection (2)(a) because it has remained on private property without the lot owner's consent, the car can be taken into custody in two separate ways: If the lot owner notifies the police, the police can cause a towing company to take the car into custody  as an abandoned vehicle under subsection (4).  Alternatively, the lot owner can have the vehicle taken into custody as an abandoned vehicle by notifying an authorized towing agency under subsection (10).  These two scenarios are dealt with separately under the statute. However, under either scenario, taking the car into custody is only authorized if the vehicle is abandoned, and the duties of the police agency regarding providing

5

notice are identical – it must enter a notice of abandoned vehicle into the LEIN system.  It is only after this initial notice is received that the secretary of state (SOS) can inform the car owner that his car has been deemed abandoned, of his post deprivation rights, and provide the abandoned notice form which is a sine qua non for initiating judicial review.

Subsection (4) provides:

**If the vehicle is an abandoned vehicle**, the police agency or the agency's designee may have the towing agency take the vehicle into custody.

Subsection (5) provides in part:

A police agency that has received a vehicle taken into custody as abandoned **shall do all of the following**:

&ast;    &ast;    &ast;

(b) **Within 24 hours after the vehicle is taken into custody, enter the vehicle as abandoned into the law enforcement information network, and notify the secretary of state through the law enforcement information network that the vehicle has been taken into custody as abandoned.**

Subsection (5) then lists the information that must be contained in the LEIN notice, which includes, among other things, the VIN, when the car was taken into custody, by whom, the business address of the current custodian and the court having jurisdiction over the custody.  Clearly, under subsection (4), the police agency can only have a vehicle into custody if it is abandoned.  Clearly under subsection (5), if the vehicle is taken into custody by a towing company, the police

6

agency must enter the vehicle onto the LEIN as abandoned.  This statutory scheme does not afford police agencies discretion as to which towed vehicles can be entered onto LEIN.

Subsection (10), which governs when a lot owner calls a towing company directly, provides in part:

> If a vehicle has remained on private property without the consent of the property owner, the owner of the private property **may have the vehicle taken into custody as an abandoned vehicle** by contacting a local towing agency.

Subsection 11 provides:

> Before removing the vehicle from private property, the towing agency shall provide notice by telephone, or otherwise, to a police agency having jurisdiction over the vehicle that the vehicle is being removed. **Within 24 hours after receipt of the notice from the towing agency, the police agency shall** determine if the vehicle has been reported stolen and **enter the vehicle into the law enforcement information network as an abandoned vehicle.**

Subsection (12) then provides that within this same 24 hour period, the police agency shall provide to the secretary of state the exact same information as required by subsection(5)(b).  This statutory scheme likewise does not afford police agencies discretion as to which towed vehicles can be entered onto LEIN.

Subsections (5)(c) and (13), respectively, then set forth the duties of the (SOS) after receiving the LEIN notice of abandoned vehicle:

> Within 7 days after receiving notice . . .that the vehicle has been taken into custody, the secretary of state shall do both of the following:

Send to the last titled owner and secured party, as shown by the records of the secretary of state as described in section 221 or 237, by first-class mail or personal service, **notice that the vehicle is considered abandoned**. The form for the notice shall be furnished by the secretary of state. **Each notice form** shall contain the following information:

The year, make, and vehicle identification number of the vehicle if available.

The address or approximate location from which the vehicle was taken into custody.

The date on which the vehicle was taken into custody.

The name and address of the police agency that had the vehicle taken into custody.

The name and business address of the custodian of the vehicle.

The procedure to redeem the vehicle.

**The procedure to contest the fact that the vehicle is considered abandoned or the reasonableness of the towing fees and daily storage fees.**

**A form petition that the owner may file in person or by mail with the specified court that requests a hearing on the police agency's action.**

The only difference between SOS's duties is that under (5)(c), the car owner is informed of his rights to contest the police agency's actions, (see (5)(c)(i)(H)), whereas under Subsection (13), the car owner is informed of his rights to contest the custodian's actions (see (13)(a)(viii)).   This is because subsection (5) governs cars taken into custody when initiated by the police, whereas subsection (13) governs cars taken into custody when initiated by the lot owner.

Under both these subsections, a vehicle owner never receives notice of his post deprivation rights from SOS unless the vehicle has been entered onto the LEIN as abandoned.  Further, even if the vehicle owner is independently aware of his post-deprivation rights, he can never challenge the claim that his vehicle was considered abandoned, or the amount of the towing and storage fees, until he

8

receives a notice form from SOS that his vehicle was considered abandoned.  It is

the abandoned vehicle notice that triggers the right to judicial review.

Further, the car owner has no other civil remedies; he can only challenge the

taking of his property under the Motor Vehicle Code.  MCL 257.252e(4) provides:

"The remedies under sections 252 through 254 are the exclusive remedies for the

disposition of abandoned vehicles."[1]

Subsections (6) and (14), respectively, govern the only procedures by which
the car owner can challenge the legality of the impoundment of his car, and fees
(towing and storage) associated with the impoundment.  These subsections are
materially indistinguishable except that under subsection (14), a vehicle owner
cannot challenge the towing and storage costs if they have been established by
contract between the municipality having jurisdiction and the towing company.
Otherwise, they share the following:

> The owner may contest the fact that the vehicle is considered
> abandoned or the reasonableness of the towing fees and daily storage
> fees by requesting a hearing and **posting a bond equal to $40.00 plus
> the amount of the accrued towing and storage fees**. A request for a
> hearing shall be made by filing a petition with the court specified in
> the notice [received from the secretary of state] within 20 days **after
> the date of the notice**. ..., if the owner requests a hearing, the matter
> shall be resolved after a hearing conducted under sections 252e and
> 252f. **An owner who requests a hearing may obtain release of the
> vehicle by posting a towing and storage bond in an amount equal
> to the $40.00 plus the accrued towing and storage fees with the
> court**. The owner of a vehicle who requests a hearing may obtain
> release of the vehicle by paying a fee of $40.00 to the court and the
> accrued towing and storage fees instead of posting the towing and
> storage bond.

---

[1] In Plaintiffs' second amended complaint, they have removed their state law claims in light of

In other words, under Michigan law, absent a contract setting the amount, the towing company, who is generally the adverse party to the car owner challenging the impoundment and/or the amount of the towing and storage fees, has the right to set the amount of the towing fees which in turn sets the amount of bond.[2]   Further, there is no statutory limit on the towing company's discretion when setting the amount.   Thus, the towing company gets to set the amount of the bond an adverse party must post before it may challenge the towing company's actions.

Further, Michigan law allows a delay of at least 38 days before a car owner can obtain judicial review.   As previously demonstrated, the police have 24 hours to notify the secretary of state, the SOS has seven days to send a notice of abandoned vehicle to the owner of the vehicle, which includes a form petition to challenge the legality of the tow and the fees, Section 252a(5)(c) and (13).   Upon the filing of a petition by the person who was deprived of his car, the court has 30 days to grant a hearing.   Section 252f(1)(a).   Thus, under the statue, at a bare minimum, a car owner can be deprived of the use of his car for 38 days, assuming

---

[2]2.  In *Noll v. Ritzer*, 317 Mich. App. 506, 515 (2016), the court ruled that even if a prehearing release was not being sought, posting of a bond in the amount of $40 plus accrued towing and storage fees must accompany a request for a hearing under MCL 257.252a, unless the fees have already been paid (or bond posted).

he receives the notice the day after it is mailed, files the petition the same day, and actually gets a hearing within 30 days.

Under the exclusive remedy provided by subsections 252 through 254, a person who has their car impounded can never be made whole. MCL 257.252f contains expressly limited remedies. The aggrieved person is not entitled to the lost use of his car, such as car rental fees and transportation from the location where his car was originally towed. MCL 257.252f allows only that, if successful at the hearing on the challenge to the impoundment, the car owner is entitled only to the return of his vehicle and the reimbursement of any impound charges. He cannot be compensated for his time contesting the charges. He cannot be compensated for legal fees. He is not even entitled to return of the $75 filing fee which the car owner must pay to petition for the return of his car, much less the annoyance, humiliation, frustration and mental anguish associated with having one's car unlawfully towed and the stress involved with the loss of one's primary mode of transportation.

MCL 257.252k provides that even though a car could be deemed abandoned because left on a private lot without the consent of the lot owner, there is no authority to tow the car unless proper notice is provided beforehand. Proper notice includes signage "prominently displayed at each point of entry for vehicular access

to the real property" that is "is permanently installed with the bottom of the notice located not less than 4 feet from the ground and is continuously maintained on the property for not less than 24 hours before a vehicle is towed or removed."

MCL 257.252d provides further restrictions on towing a vehicle on a private lot without the owner's consent:

> (2) Unless the vehicle is ordered to be towed by a police agency or a governmental agency designated by a police agency under subsection (1)(a), (d), (e), or (k), **if the owner or other person who is legally entitled to possess a vehicle to be towed or removed arrives at the location where the vehicle is located before the actual towing or removal of the vehicle, the vehicle shall be disconnected from the tow truck**, and the owner or other person who is legally entitled to possess the vehicle may take possession of the vehicle and remove it without interference upon the payment of the reasonable service fee, for which a receipt shall be provided.[3]

## B.  Plaintiff Has Sufficiently Alleged a Fourteenth Amendment Procedural Due Process Claim.

As the court explained in *Mertik v. Blalock*, 983 F.2d 1353, 1365 (CA 1993):

> In this Circuit, then, a § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss.

---

[3]  None of these subsections apply to the instant case.  Section 1(a) applies to hazardous vehicles. Section 1(d) apples to stolen vehicles.  Section 1(e) applies to preserving evidence of a crime or vehicles used in the commission of a crime.  Section 1(k) applies to cars involved in crashes that cannot safely be driven from the scene.

Id. (emphasis in original; citations omitted).

To establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest [or adequate post-deprivation rights]." *Albrecht v. Treon*, 617 F.3d 890, 894 (CA 6 2010) (internal quotation marks omitted). Property rights are "principally created by state law," but "whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law." Id. (internal quotation marks omitted).

### 1.   The property rights at issue were compelling and subject to protection under the Due Process Clause.

A person's property interest in the uninterrupted use of their vehicle is protected by the due process clause.

> Loss of the use and enjoyment of a car deprives the owner of a property interest that may be taken from him only in accordance with the Due Process Clause. Due process strictures must be met though the deprivation be temporary.
>
> *                        *                        *
>
> The private interest in the uninterrupted use of an automobile is substantial. A person's ability to make a living and his access to both

the necessities and amenities of life may depend upon the availability of an automobile when needed.

*Stypmann v San Francisco*, 557 F2d 1338, 1342-43 (CA 9, 1977).  *See also Segura v. Block*, 1993 U.S. App. LEXIS 28828, *4 (CA 9 1993):

> Segura clearly had a property interest in the uninterrupted use of his truck. See, e.g., Scofield v. City of Hillsborough, 862 F.2d 759, 762 (9th Cir. 1988); Draper v. Coombs, 792 F.2d 915, 922 (9th Cir. 1986).

*And see Bell v Burson*, 402 US 535, 539 (1971), in which the Supreme Court held that even driver's licenses are property protected by the Due Process Clause because "their continued possession may become essential in the pursuit of a livelihood."

**2.    Plaintiff and the similarly situated class members have adequately pled a due process violation for inadequate post-deprivation remedies because Defendant willfully refused to enter their towed cars on LEIN, which was the only way they would receive the notice of their post deprivation remedies, and the notice form necessary to challenge the impoundment and associated fees.**

In this case, Plaintiff, and well over 100 similarly situated, prospective class members, never received the notice of abandoned vehicle form, informing of their right to contest the lawfulness of the impoundment and/or the reasonableness of the towing and storage fees.  This is because of Defendant's willfil policy to refuse to provide notice of abandoned vehicle to the SOS.

14

In *Arnold v. International Business Machines Corp.,* 637 F.2d 1350, 1355 (CA 9 1981), the court stated:

> [P]ersonal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable.   The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

Procedural due process ensures that "parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (quoting *Baldwin v. Hale*, 68 U.S. 223 (1863).  In a similar vein, another federal district court stated:

> Even constitutionally adequate procedures are useless if those whose property is being taken are unaware of their existence. And Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 13-15, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978) certainly teaches that, at least in some contexts, due process requires that interested persons be informed of the availability of procedures through which they may challenge actions that deprive them of their property.

*Anderson v Rizzo*, 469 F Supp 683, 685 (ED Pa, 1979).

In this case, not only were Plaintiff and over 100 prospective class members not provided notice of their right to a post-deprivation remedy, but because they were never provided the notice that their vehicle had been deemed abandoned, they were unable to challenge the legality of towing or reasonableness of fees even if

15

they were independently aware of their right to challenge the impoundment and/or the fees. MCL 257.252a (5)(g) provides that the notice from the SOS shall inform the owner of "the procedure to contest the fact that the vehicle is considered abandoned" However, without the form, sent by SOS, it is impossible to demonstrate that the vehicle has been considered abandoned and no right to judicial review. Further, Section 252(6) states that a request for hearing shall be made within 20 days **after** receiving the notice. Thus, before the notice is received, there is not right to demand a hearing. The petition regarding impoundment of motor vehicles, SCAO Form DC 90, specifically requires that the date of the notice be provided (see question 4).

Plaintiff and dozens upon dozens of prospective class members were denied access to the courts to challenge the impoundment of their vehicle because they were never provided the notices required by statute. This was caused by Defendant's willful failure to enter the towed vehicles onto LEIN as abandoned. Thus, Defendant set in motion a series of acts by others which the actor knows or reasonably should know would cause a constitutional injury.

Defendant Hamtramck clearly should have known that the failure to report impounded cars as "abandoned" would deprive Plaintiff and others of their post deprivation remedies and rights. The Michigan Vehicle Code gave it constructive

notice. Given the absolute mandatory reporting language in the statute, see 257.252a(5)(b) and (11) and (12), Hamtramck clearly should have known that it did not have discretion as to which cars to report as abandoned, and under susections (5)(c) and (13),that its failure to report would result in SOS not sending notice to the car owners.

### 3. Hamtramck denied Plaintiff and prospective class members the right to an impartial arbiter by allowing the towing company unbridled discretion to set the amount of bond, which was required to be posted before a hearing could be obtained, even though the towing company was adverse to the car owners, like Plaintiff, challenging the impoundment and/or the towing and storage fees.

At a very minimum, to comport with due process, the state must provide a neutral arbiter. As the Supreme Court stated, "And of course, an impartial decision maker is essential". *Goldberg v Kelly*, 397 US 254, 271 (1970). Michigan law requires that the petitioner challenging the impoundment of his vehicle most post a bond in the amount of the accrued towing and storage fees plus $40. MCL 257.252a(14); *Noll*, 317 Mich App at 515. However, Michigan law allows a municipality the discretion to allow the towing company to determine the amount of the accrued towing and storage fees, and thus the bond. And there are no restraints or limitations placed on the amount of the towing and storage fees the towing company could set.

17

Thus, in this case, Defendants Breakthrough and Dickerson were given unbridled discretion to set the amount of the towing and storage fees, and thus the bond, in whatever amount they chose, in the very cases where parties sought to challenge their actions.  This resulted in arbitrary and capricious towing and storage fees being set and thus an arbitrary and capricious bond amount.  The fees were nearly always set at five to six times the normal rate for a tow.  For example, one of the prospective class members' had her car unlawfully towed.  Later that evening, she called Breakthrough and determined that her car was towed to a lot 2.8 miles away.  She was told that the towing and storage fees were $440.  A short time later, she called Breakthrough and stated that he car broke down and she needed a tow of three miles and asked how much it would cost.  She was quoted a price of $75. Notably, Plaintiff Robertson, and nearly all of the prospective class members were told that fee would be upwards of $400 even when they called Breakthrough the same day or the following day, and even though their cars were towed only two to three miles.  Plaintiff Robertson paid the extortionate ransom to get her car back.

Defendant Hamtramck chose this unconstitutional practice.  The statute does not require that the respondent towing company be given unbridled discretion to determine the towing and storage fees and thus the amount of the bond. MCL

257.252a(14) allows a municipality to set the towing and storage fee by contract. However, Hamtramck willfully abdicated its duty to provide citizens procedural due process by ensuring some semblance of a neutral arbiter to make the bond decision when citizens challenge the legality of a tow.  Again, Defendant "set[] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury".   In fact, Defendant exacerbated this constitutional violation by willfully refusing to enter the towed vehicles onto LEIN as abandoned, which prevented Plaintiff and the prospective class members from challenging the arbitrary and capricious bonds.

**4. Plaintiff and the prospective class members were denied the prompt, post deprivation hearing required following the prehearing deprivation of their vehicles.**

As stated in *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 485 (CA 6, 2014):

> A fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965) (internal quotation marks and citations omitted). We apply the well-known balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), to determine if due process was afforded, and we consider: "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's

19

interest, including the function involved, and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

In balancing the *Matthews* factors in the car towing or car detention context, courts have universally recognized that the private interest in the uninterrupted use of an automobile is compelling, as is the state's interest in the initial tow, and shifting the cost of a lawful tow onto the owner.  *See Davis v. Dahmm,* 763 F Supp 1010, 1012-13 (WD Ark, 1991) and the survey of cases therein.  However, once the initial towing is accomplished, the government's justifications for delaying a hearing are not compelling. *Wiren v. Eide,* 542 F.2d 757, 761 n.6 (CA 9 1976).

As to what length of delay comports with due process after a vehicle has been detained or towed, at least one court has held that prepayment of towing and storage fees may be constitutionally required only if the statutory scheme allows for a post-seizure hearing within forty-eight hours and for immediate release of the vehicle without such payment in the event it is determined that there was an insufficient factual or legal basis for impounding the vehicle. *See Goichman v. Rheuban Motors, Inc*., 682 F.2d 1320 (CA 9 1982) (noting a five day delay was too long).   Another court has held that requiring prepayment before release was constitutionally permissible only because a post-seizure hearing was available virtually on demand during business hours at which the fees were immediately

reimbursed if the owner prevailed. *See Goichman v. Aspen*, 859 F.2d 1466 (CA 10 1988). Yet another concluded that notice of the right to contest the car's detention must be provided within 24 hours, and a right to a hearing must be provided within 72 hours of receiving a request. *Lee v Thornton*, 538 F2d 27, 33 (CA 2, 1976).

In this case, Plaintiff and virtually all of the prospective class members have still not received notice due to Hamtramck's refusal to enter their cars onto the LEIN system. Thus, they were denied a prompt hearing on the impoundment of their cars in violation of their ight to procedural due process.

### 5.   Plaintiffs adequately pled a procedural due process claim because Defendant's agents deprived Plaintiff of her vehicle without following the notice procedures required by state law.

While a predeprivation hearing is generally not required before towing a vehicle, Plaintiff was at least entitled to the notice guaranteed by Michigan law. In *NIPP Royal Oak, LLC v. City of Royal Oak*, 420 F Supp 2d 791, 797 (ED Mich, 2006), the court found that the plaintiff sufficiently stated a due process claim when he alleged that the city deprived him of the dance license that was attached to his liquor license when it failed to follow the procedures required by state and local law before doing so:

> Michigan law and the City of Royal Oak Liquor Control Ordinance require that certain procedures must be followed before a liquor license may be suspended or revoked. M.C.L. §§ 436.1501(2), 1903; City of Royal Oak Ord. No. 2001-06 § 430-8. Plaintiff contends it was

21

denied due process because Defendant failed to follow the specified procedures. (Compl. PP22-32, 52; Resp. at 5-6, 8, 11.) These facts are sufficient to state a claim that Plaintiff's due process rights were violated.

Similarly, in this case, Plaintiff Robertson contends that Michigan law requires that certain procedures must be followed before her car was towed from private property and that she was denied due process because Defendant's agents failed to follow the specified procedures.   Michigan law clearly sets forth the procedure required prior to towing an individual's car from private property – there must be proper signage (notice) of the potential for towing, MCL 257.252l, and the car cannot be towed if the owner arrives prior to the car being removed, MCL 257.252(d)(2).

In this case, Plaintiff alleges that there were no signs displayed at any point of entry to the property or within view of the place where her car was parked. Plaintiff also alleges that when she learned that a Breakthrough tow truck was attempting to hook up her car, she went to the parking lot before her car was even attached to the tow truck and told the Breakthrough driver it was her car and he could not tow it.  The driver told Plaintiff to "call the number on the sign" and gestured to a sign across the parking lot, not visible from the location of Plaintiff's car.  At that point, Plaintiff called HPD.  Defendant Hamtramck Police Officers John Does one, two and three responded to the scene in two separate police cars. Despite the lack of proper signage at the location and despite the fact that she was at the location of the vehicle before her car was even hooked, much less removed, HPD John Does one, two and three told Robertson that Breakthrough Towing had a right to tow her car and that it would be taken to HPD and then to Breakthrough's storage location.  Fearing arrest if she tried to prevent the towing of her car, she took no further action to prevent the tow.  The allegations clearly state a procedural due process claim for a deprivation of property without adequate predeprivation

notice and without following the required state law procedures for depriving a person of the use of their car.

III.  DEFENDANTS BREAKTHROUGH AND DICKERSON ACTED UNDER COLOR OF LAW FOR THE PURPOSES OF § 1983, AND THEIR ACTIONS MAY BE FAIRLY ATTRIBUTED TO HAMTRAMCK.

Plaintiffs have pled facts sufficient to establish that the actions of Breakthrough and Dickerson were under color of law.  There are three primary, but not exclusive, tests used to determine whether the private actor is liable under § 1983: (1) the public function test, *West v. Atkins*, 487 U.S. 42, 49-50 (1988); (2) the state compulsion test, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 170 (1970); and (3) the symbiotic relationship or nexus test, *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721-265 (1961).

However, as stated in *Memphis, Tenn Area Local, American Postal Workers Union v. City of Memphis*, 361 F3d 898, 905 (CA 6, 2004):

> Application of these tests to the conduct of a private entity, however, is relevant only in cases in which there are no allegations of cooperation or concerted action between state and private actors. Cooper v. Parrish, 203 F.3d 937, 952 n.2 (6th Cir. 2000) ("If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983 ."); Moore v. City of Paducah, 890 F.2d 831, 834 (6th Cir. 1989) (holding that individuals who conspire with state actor to deprive individuals of their federally-protected rights may be found to have acted under color of state law for purposes of § 1983 liability). Private persons may be held liable under § 1983 if they willfully participate in joint action with state agents. Dennis v. Sparks, 449 U.S.

24, 27-28, 66 L. Ed. 2d 185, 101 S. Ct. 183 (1980); United States v.
Price, 383 U.S. 787, 16 L. Ed. 2d 267, 86 S. Ct. 1152 (1966)

In this case, Plaintiffs can establish that these defendants acted under color of law
in numerous ways.

### A.   Defendants Acted under Color of Law by Bribing Public Officials.

First, Plaintiffs pled that these Defendants bribed Hamtramck police

officers.[4]  As the Court explained in *Carmen Auto Sales III, Inc v City of Detroit*,

___F Supp 3d___; 2018 U.S. Dist. LEXIS 42298, at *21 (ED Mich, Mar. 15,

2018):

> It is true that bribery on the part of private officials may lead to the
> private parties' § 1983 liability. See Dennis v. Sparks, 449 U.S. 24,
> 27-29, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980) (citing Adickes v. S.
> H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142
> (1970). And one circuit attaches § 1983 liability to private parties
> willfully engaged in a "corrupt conspiracy" to bribe public officials.
> See DuBose v. Kelly, 187 F.3d 999, 1003 (8th Cir. 1999). But the
> corrupt conspiracy must be established with admissible evidence and
> related to the alleged constitutional violation.

In this case, Plaintiffs allege that Breakthrough bribed Hamtramck police by

directly paying them money to allow them to tow cars from private lots.  The

Hamtramck polic e allowed Breakthrough to tow the cars even though the owners

---

[4]   In their complaint, Plaintiffs pled the bribery averment on information and belief.  This
information and belief is based on an eyewitness who saw a Breakthrough tow truck driver hand
money to a Hamtramck police officer on the scene of a tow.  This allegation will be included
in Plaintiffs' amended complaint.

of the lots did not call to request the tow, and even though there was not proper notice of a potential tow as required by Michigan law. On some occasions, the police allowed Breakthrough to tow cars even though the car owners were on the scene before the car was removed, directly in violation of Michigan law. Further, the Hamtramck police aided Breakthrough by willfully refusing to report the cars as abandoned on the LEIN system, which meant that the car owner could never challenge the tow. This allowed Breakthrough to charge exorbitant fees.

### B. Defendants Acted under Color of Law by Misusing the Power Granted to Them under the Authority of State Law.

Plaintiffs also alleged that Breakthrough and Dickerson abused the power and authority granted to them by state law. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic*, 313 U.S. 299, 327 (1941).

In this case, State law grants licensed tow companies the right to tow vehicles from private lots when the lot owner requests a tow, but only under certain conditions, as outlined above. Without this grant of the authority of the state, Breakthrough could not tow cars.

Plaintiffs allege that the private actor defendants completely misused and abused their power in myriad ways: They towed cars from private lots without the

request of the lot owner; They used their own spotters to tell them when cars were parked in private lots; They towed cars when there was not the notice required by law; They towed cars when the owner was present before the car was removed; They charged excessive towing and storage fees. Further, they abused their authority in these myriad ways knowing the car owner would be unable to challenge either the tow itself or the excessive charges because Hamtramck was knowingly refusing to list the cars as abandoned on Lein, which means that the car owner could never get the notice of abandoned vehicle and notice of the right to seek judicial review of the legality of the tow and/or the charges.

### C. Defendants Acted under Color of Law under the Symbiotic Relationship Test.

Under the symbiotic relationship or nexus test, a plaintiff must demonstrate that there was a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself. *See Jackson*, 419 U.S. at 357-58; *Burton* 365 U.S. at 724-25. This occurs when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar*, 457 U.S. at 937

In the context of towing companies, courts have held that a tow company does not act under color of law when the decision to tow was the city's alone and

there was no evidence that the tow company and city shared in the alleged unconstitutional goal, *Bowersock v. City of Lima*, ___F Supp 2d___; 2008 U.S. Dist. LEXIS 31480, at *8-9 (ND Ohio 2008), where the tow company was merely performing its public contract with the city, *Banks v. Fedierspiel,* ___F Supp 2d___; 2011 U.S. Dist. LEXIS 36311, at *13-14 (ED Ky 2011), or when the tow was made at the request of the owner of a private lot, *Beyer v. Vill. of Ashwaubenon*, 444 F. App'x 99, 101 (7th Cir. 2011).

Courts have held that towing companies did act under color of law when the private towing company acting at the behest of a police officer and pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws, *Stypmann*, 557 F.2d at 1338 *Goichman* 682 F2d at 1322; and when a private towing company acted upon the instruction of a police officer to impound a vehicle during an ongoing criminal investigation, *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). *See also Soffer v. City of Costa Mesa*, 798 F.2d 361, 364 (9th Cir. 1986) (recognizing that in certain situations, a private towing company could qualify as a state actor under 42 U.S.C. § 1983).

In this case, Breakthrough was a regulated entity.  See MCL 257.252a, *et seq*.  Moreover, using their spotters, these private defendants made numerous decisions to tow cars from private lots without any request from or the permission

of the lot owners, and without the proper signage giving notice of towing penalty. Hamtramck police often appeared at the scene of the tow and prevented the car owners from taking their cars before the cars were even hooked or removed from the lots. Hamtramck officers repeatedly misinformed the car owners, telling them they had no right to their vehicle, even when it had not yet been hooked to the tow truck, telling the car owner that once the tow truck driver made the decision to tow, he had a right to tow the car and/or that the decision to allow the car owner to retrieve his car was discretionary with the driver. These actions were undertaken in clear violation of Michigan law. Hamtramck officials then aided the private defendants actions of setting extortionate and excessive fees by willfully refusing to cause notice of the right to challenge the tow and the fees. Breakthrough and Dickerson clearly "acted together with or ... obtained significant aid from state officials".

### D.   Defendants Acted under Color of Law under the State Compulsion Test.

Plaintiff has pled sufficient facts to satisfy the state-compulsion test. "The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state". *Memphis*, 361 F3d at 905. In this case, Hamtramck significantly encouraged Breakthrough and Dickerson, covertly if not overtly, to tow vehicles illegally and charge excessive fee by willfully refusing to provide the notice necessary for the car owners to challenge the tows, and by preventing the car owners from retrieving their cars before their cars were towed.

## IV.  PLAINTIFF HAS SUFFICIENTLY PLED A MONELL CLAIM AGAINST THE CITY OF HAMTRAMCK

Monell suits may be brought either "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or if the constitutional deprivation is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-691(1978).  The custom "must be so permanent and well settled as to constitute a custom or usage with the force of law", *id.*

To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the "moving force" behind the deprivation of the plaintiff's rights. *Powers v. Hamilton County Pub. Defender Comm'n,* 501 F.3d 592, 606-07 (6th Cir. 2007).

### A.  Hamtramck's Officials Adopted a Policy of Wilfully Refusing to Provide Car Owners with the Notice Necessary to Challenge the Legality of the Impoundment of their Vehicles and/or the Excessiveness of the Towing and Storage Fees.

In this case, Plaintiff alleges that there were dozens upon dozens, if not hundreds, of times during the last three years where car owners had their cars

towed and that they never received a notice of abandoned vehicle from SOS because Hamtramck willfully refused to enter towed cars onto the LEIN system as abandoned, thus depriving the owners of the right to challenge the impoundment and associated fees.

Defendant Hamtramck has acknowledged to Plaintiffs that it had a policy of willfully refusing to enter the cars onto the LEIN system.  In a stunning display of ignorance of the law, when asked by Plaintiffs why so many of the named and prospective class members never received their notice of abandoned vehicle form, the Hamtramck City Attorney replied:

> Abandoned vehicle notices were not sent because the people who had their cars poached by Breakthrough/Magic did not abandon their vehicles. They parked their cars/trucks with the full expectation of returning to them and driving them home. As for civil remedies, your clients were not limited to proceeding under MCL 257.25a. If an aggrieved party felt that Breakthrough or Magic Towing acted improperly, they could have filed civil actions in district court against the towing company seeking damages.[5]

> In my experience, abandoned vehicles are the ones left on the side of the road for days, or even weeks.  Sometimes you see an abandoned car with an orange sticker on the window-a warning that it is about to get towed.

---

[5]   In addition to apparently not reading MCL 257.252a (5), (11) and (12)  which requires HPD to always report the vehicle as abandoned whenever Breakthrough removed a car from a private lot, the City Attorney also apparently did not read MCL 257.252e(4) which provides: "The remedies under sections 252 through 254 are the exclusive remedies for the disposition of abandoned vehicles."

Some vehicles are more abandoned than others.

I raise the above points because your complaint heavily relies upon MCL 257.252a and the notion that the Hamtramck PD was required to treat you client's vehicle as abandoned.  Although the statute defines abandoned to include "a vehicle left on private property without the consent of the owner," it does not require police departments to treat every vehicle towed from a private lot as abandoned. The tows in question were not police-initiated, nor were the cars designated as abandoned vehicles on Breakthrough's tow slips. As previously stated, Hamtramck has no contractual relationship with Breakthrough towing—they were merely processing paperwork for vehicles towed by private companies from private lots.[6]

Notwithstanding the city attorney's musings about the meaning of an abandoned vehicle, the mandatory reporting language in the statute did not give Hamtramck discretion to choose what towed cars to report as abandoned and which ones not to report.  Nor does the statute allow Hamtramck to quantify the meaning of abandoned for the purposes of the reporting requirement.  While some cars may be more abandoned than others, all towed cars have to be entered onto the LEIN system as abandoned.  This policy pronouncement by the Hamtramck City Attorney clearly establishes *Monell* liability.  Although not pled in Plaintiffs' first amended complaint, it will be duly pled in Plaintiffs second amended complaint.  In fact, Plaintiffs will be filing a motion for summary judgment based on this admission.

---

[6]  This averment will be added in Plaintiffs' second amended complaint.

31

**B.  Plaintiffs Can Also Demonstrate Monell Liability Based on the City's Failure to Properly Train its Police Officers.**

Plaintiffs allege that Hamtramck's police officers were improperly trained in the Michigan Vehicle Code as it pertains when cars can be towed and its police officers' duties in terms of providing the proper notice to SOS so the car owners could seek judicial review of the impoundments and associated fees.  Plaintiffs will allege that Hamtramck received numerous complaints from car owners who had their cars illegally towed, and otherwise had notice from various reports, investigations and media coverage but did nothing to rectify the systemic problems.

In *Miller v Sanilac Co*, 606 F3d 240, 254-55 (CA 6, 2010), the court stated:

> A systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability. Gregory v. City of Louisville, 444 F.3d 725, 753 (6th Cir. 2006) (citing City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). "The inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.' " Slusher v. Carson, 540 F.3d 449, 457 (6th Cir. 2008) (quoting Harris, 489 U.S. at 388). To establish deliberate indifference, the plaintiff "must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." Fisher v. Harden, 398 F.3d 837, 849 (6th Cir. 2005).

In this case, besides wrongfully training its police officers that they did not have to report towed cars as abandoned, Hamtramck also failed to train its officers

32

that towing companies could not tow cars if the proper signs were not in place giving notice of the towing penalty.  It also failed to properly train its officers that when the car owner or authorized user arrives before the car is removed, the tow truck driver cannot tow the car.

Plaintiffs will allege in their amended complaint that they have numerous videos of Hamtramck police officers telling car owners, who are on the scene before their cars are removed, that once the tow truck driver "decided" to tow the car, it was the driver's right to tow the car and the car owner could do nothing to prevent it.  In another video, while several of his customers are about to be towed, a bar owner tells the Hamtramck police officers about the requirement for proper signage and the right of car owners not to have their cars towed if they arrive before the car is removed.  The Hamtramck officer replies by telling the bar owner not to believe everything he reads on the internet, and that the law required that the tow truck driver be allowed to tow the car despite the lack of proper signage and despite the fact that the owner arrived before the car was towed.  In other videos, similar statements are made by HPD officers.

These incidents were not isolated.  There were dozens if not hundreds of incidents and dozens of complaints about these towing practices that the city ignored.  These abuses were systemic and Hamtramck was clearly on notice that it

needed to retrain its officers, assuming they ever received any training about the Michigan Vehicle Code besides the blatant mis-training they received about providing notice onto the LEIN system.   Accordingly, Plaintiffs have stated a *Monell* claim for failure to train.

WHEREFORE, for the foregoing reasons, Defendant's motion should be denied.

Respectfully Submitted,

/s/ Kevin S. Ernst
KEVIN S. ERNST (P44223)
KATHLEEN M. GARBACZ (P79901)
Attorneys for Plaintiffs
645 Griswold Street, Ste. 4100
Detroit, Michigan 48226
Phone: (313) 965-5555
Fax: (313) 965-5556
kevin@ernstmarkolaw.com
kathleen.m.garbacz@gmail.com

Dated: July 30, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2019, I presented the foregoing paper to this Court which will send notification of such filing to the above listed attorneys of record.

/s/ Kathleen M. Garbacz

34