# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**OLIVIA ROBERTSON, LENG VANG, TIMOTHY BATES, ASHLEY COLLINS**, **JUSTIN KANDAH**, and **KAREN ABKE** on behalf of themselves and other persons similarly situated, known and unknown,

     Plaintiffs,

v.

**BREAKTHROUGH TOWING, LLC, MAGIC TOWING, LLC** (formerly Breakthrough Towing, LLC), **MICHAEL DICKERSON** (aka Mike Jones), individually and as owner/resident agent of Breakthrough Towing and Magic Towing, **WOODWARD DETROIT CVS, LLC, CVS CAREMARK CORPORATION, VIRGIRILLI MANAGEMENT, McDONALD'S CORPORATION, MIDTOWN LIQUOR & DELI, THE CITY OF DETROIT, THE CITY OF HAMTRAMCK, CITY OF HAMTRAMCK POLICE DEPARTMENT JOHN DOES**, who are sued in their individual capacities, and **CITY OF DETROIT POLICE DEPARTMENT JOHN DOES**, who are sued in their individual capacities, jointly and severally,

     Defendants.

**CASE NO. 19-10266**

**HON. AVERN COHN**

TONY D. PARIS (P71525)
KATHLEEN M. GARBACZ (P79901)
Attorneys for Plaintiffs
4605 Cass Avenue, Second Floor
Detroit, Michigan 48201
313-993-4505/Fax: 313-887-8470
tparis@sugarlaw.org
kathleen.m.garbacz@gmail.com

KEVIN S. ERNST (P44223)
HANNAH R. FIELSTRA (P82101)
Attorneys for Plaintiffs
ERNST CHARARA & LOVELL, PLC
645 Griswold Street, Ste 4100
Detroit, Michigan 48226
Phone: (313) 965-5555
Fax: (313) 965-5556
hannah@ecllawfirm.com

## PLAINTIFFS' SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COME Plaintiffs herein, on behalf of themselves and other persons similarly situated, known and unknown, by and through their counsel, and state as follows in support of their class action complaint:

## GENERAL ALLEGATIONS

1.   Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1332.

2.   Venue in this district is proper under 28 U.S.C. § 1391(b) because some Defendants reside in this district and all of the events and omissions giving rise to Plaintiffs' and proposed class members' claims occurred in this district.

3.     This case involves a conspiracy to violate the constitutional rights of the Plaintiffs and potential class members through a comprehensive and systemic bribery scheme to perpetuate the illegal, predatory, and rogue car impoundment practices of Defendants Michael Dickerson, BREAKTHROUGH TOWING, LLC and its alter-ego MAGIC TOWING, LLC, which was enabled, aided and assisted by multiple Hamtramck police officers and the City of Hamtramck, and multiple Detroit police officers and the City of Detroit, and was perpetrated against hundreds, if not thousands, of people in the City of Detroit and the City of Hamtramck over the course of at least the last three years.

4.     Plaintiff, OLIVIA ROBERTSON, is a resident of the County of Oakland, State of Michigan.

5.     Plaintiff, LENG VANG, is a resident of the County of Macomb, State of Michigan.

6.     Plaintiff, TIMOTHY BATES, is a resident of the County of Wayne, State of Michigan.

7.     Plaintiff, ASHLEY COLLINS, is a resident of the County of Wayne, State of Michigan.

8.     Plaintiff, JUSTIN KANDAH, is a resident of the County of Wayne, State of Michigan.

9.   Plaintiff KAREN ABKE, is a resident of the County of Oakland, State of

Michigan.

10.   Defendant, BREAKTHROUGH TOWING, LLC is a one-member limited

liability company owned by Defendant MICHAEL DICKERSON formerly

licensed to do business in the State of Michigan and, at all times relevant

hereto, was acting under color of law through its agents.  It exercised a tradi-

tionally, exclusive state function (setting the bond required to initiate judicial

proceedings).  It bribed public officials to allow it to illegally tow cars.  It

bribed private businesses to allow them to tow legally parked vehicles on the

private business's property.  It misused and abused the power granted to it

by the Michigan Vehicle Code to impound vehicles.  It received significant

aid and encouragement from government officials and cooperated with po-

lice in a concert of action whereby police officers: illegally prevented car

owners from retrieving their cars before their cars were removed by Break-

through; allowed Breakthrough to tow cars without the notice required by

Michigan law; allowed Breakthrough to decide when to impound vehicles;

jointly decided with Breakthrough when to tow cars from private lots with-

out the request or consent of the lot owner.  Breakthrough also acted under

color of law by setting extortionate towing and storage fees, knowing that

city officials would not send the notice required by law that would allow the

car owners to challenge the legality of the impound and/or the amount of the associated fees.

11.    Defendant, MAGIC TOWING, LLC, is a successor limited liability company of Breakthrough. At all times relevant hereto, it was operating under color of law in the same manner set forth in paragraph 10, which is incorporated by reference.

12.    Defendant MICHAEL DICKERSON (aka MIKE JONES) is the sole member and resident agent of Breakthrough Towing, LLC, and Magic Towing, LLC.  At all times relevant hereto, he was operating under color of law in the same manner set forth in paragraph 9, which is incorporated by reference.

13.    Defendants Breakthrough, Magic and Dickerson will hereafter be collectively referred to as "Breakthrough."

14.    In addition to what has been described above, Breakthrough and/or its agents, assume the responsibility of performing all of the following additional functions on behalf of Detroit and Hamtramck: (a) acting as custodian of vehicles in towing them to a tow yard and storing them there; (b) deciding if, when, and to whom vehicles should be released; (c) determining what documentation must be provided to secure the release of vehicles; (d) determining how much is required to be paid for vehicles to be released; and (e)

determining the amount, and method of payment, of bond or fees required to be paid in order for vehicle owners to even have the ability to challenge the taking of their vehicles in the applicable state district court.

15. Defendant, McDONALD'S CORPORATION, is a corporation organized under the laws of the State of Delaware, registered in the State of Michigan, and doing business in Wayne County.  Through its agents, it conspired with Defendant Breakthrough, which was acting under color of law, to violate one or more of Plaintiffs' constitutional rights, when its agents took bribes from Breakthrough in exchange for reporting cars to be towed even when the cars were legally parked, and the car owners were patronizing McDonald's.  McDonald's employees and managers received as much as $100 per tow for calling in legally parked cars to be towed.  In fact, two Breakthrough tow trucks would routinely park in the alley behind McDonalds #20757, located on Woodward Avenue in the City of Detroit, Michigan, and wait for calls to come regarding legally parked cars in the McDonald's lot, which were then towed.  Many of the car owners who had their cars towed were in line to buy food, still eating, or in the bathroom, mere feet away, when their legally parked cars were towed.  Dickerson would often pay over $1,000 per day to an "impound fund" that McDonald's employees and managers would share.  Defendant McDonald's Corporation received numerous complaints

over the course of several years from customers who had their cars towed. In fact, Breakthrough's illegal towing and extortion practice was so legion that it is the subject of a YouTube video that has been viewed more than 3,000,000 times. The scheme was so comprehensive and systemic that when towing victims confronted the Breakthrough drivers in the process of towing their cars, the drivers told the car owners to go back into McDonalds and ask for specific individuals: "Mr. Senior" (allegedly a McDonald's manager), and "Alize" to discuss the impoundment.  The car owners were always informed by McDonalds agents, "There is nothing we can do." McDonald's Corporation, through its agents, acted under color of law by conspiring with a person acting under color of law to violate the constitutional rights of Plaintiffs and the potential class members.

16.   Defendant, VIRGIRILLI MANAGEMENT (McDONALD'S #20757), is a corporation organized under the laws of the State of Michigan, doing business in Wayne County.  VIRGIRILLI MANAGEMENT is independently owned, a franchisee, a subsidiary, and/or alter-ego of Defendant McDONALD's CORPORATION.  Through its agents, Virgirelli conspired with Breakthrough to violate one or more of Plaintiffs' constitutional rights when its agents took bribes from Breakthrough in exchange for reporting cars to be towed even when the cars were legally parked, and the car owners were

patronizing McDonald's.  McDonald's employees and managers received as much as $100 per tow for calling in legally parked cars to be towed. In fact, two Breakthrough tow trucks would routinely park in the alley behind McDonalds #20757, located on Woodward Ave. in the City of Detroit, Michigan, and wait for calls to come regarding legally parked cars in the McDonald's lot, which were then towed.  Many of the car owners who had their cars towed were in line to buy food, still eating, or in the bathroom, mere feet away, when their legally parked cars were towed.  Dickerson would often pay over $1,000 per night to an "impound fund" that McDonald's employees and managers would share.  Defendant VIRGIRILLI MANAGEMENT through McDONALD'S #20757 received numerous complaints over the course of several years from customers who had their cars towed. In fact, Breakthrough's illegal towing and extortion practice was so legion that it is the subject of a YouTube video that has been viewed more than 3,000,000 times. The scheme was so comprehensive and systemic that when towing victims confronted the Breakthrough drivers in the process of towing their cars, the drivers told the car owners to go back into McDonalds and ask for specific individuals: "Mr. Senior" (allegedly a McDonald's manager), and "Alize" to discuss the impoundment.  The car owners are always informed by VIRGIRILLI agents, "There is nothing we can do."  VIRGI-

8

RILLI, through its agents, acted under color of law by conspiring with a person acting under color of law to violate the constitutional rights of Plaintiffs and the potential class members.

17. Defendant, CVS CAREMARK CORPORATION, is a corporation organized under the laws of the State of Delaware, registered in the State of Michigan, and doing business in Wayne County. Through its agents, it conspired with Breakthrough to violate one or more of Plaintiffs' constitutional rights when its agents took bribes from Breakthrough in exchange for reporting cars to be towed even when the cars were legally parked or otherwise not given requisite legal notice before being deprived of their property. CVS Caremark Corporation, through its agents, acted under color of law by conspiring with a person acting under color of law to violate the constitutional rights of Plaintiffs and the potential class members.

18. Defendant, WOODWARD DETROIT CVS, LLC (CVS PHARMACY #8137), is a corporation organized under the laws of the State of Michigan, doing business in Wayne County. WOODWARD DETROIT CVS, LLC is independently owned, a franchisee, a subsidiary, and/or alter-ego of CVS CAREMARK CORPORATION. Through its agents, it conspired with Defendants Breakthrough to violate one or more of Plaintiffs' constitutional rights when its agents took bribes from Breakthrough in exchange for report-

ing cars to be towed even when the cars were legally parked or otherwise not given requisite legal notice before being deprived of their property. Woodward Detroit CVS, through its agents, acted under color of law by conspiring with a person acting under color of law to violate the constitutional rights of Plaintiffs and the potential class members.

19. Defendant, MIDTOWN LIQUOR & DELI, is a corporation organized under the laws of the State of Michigan, doing business in Wayne County. Through its agents, it conspired with Defendants Breakthrough and Dickerson to violate one or more of Plaintiffs' constitutional rights when its agents took bribes from Breakthrough and Dickerson in exchange for reporting cars to be towed even when the cars were legally parked, and/or the car owners were patronizing Midtown Liquor & Deli, and/or otherwise not given requisite legal notice before being deprived of their property. Midtown Liquor and Deli, through its agents, acted under color of law by conspiring with a person acting under color of law to violate the constitutional rights of Plaintiffs and the potential class members.

20. Defendant, CITY OF DETROIT (Detroit) is a municipality located in Wayne County, Michigan. It engaged in, acquiesced to, and ratified through its actions and/or omissions a systemic failure to train its police officers adequately with regard to impounding and seizing vehicles. It failed to train its

10

officers that cars parked on private lots could not be impounded without the specific notice required by the Michigan Vehicle Code (Code) and without a request for impoundment by the lot owner/lessor.  It failed to train its officers that under the Code, a vehicle could not be impounded from a private lot if the car owner or authorized user arrived at the lot before the car was removed from the lot.  And it failed to train its officers that under the Code, whenever a car was impounded by a towing company, officers were required to enter the car into the LEIN system as abandoned to notify the Michigan Secretary of State (SOS) so the SOS could send the car owner a Notice of Abandoned Vehicle form, which is the instrument that gives the car owners notice of their post-deprivation rights and the form that is a sine qua non for obtaining judicial review of the impound and impound fees.  Defendant Detroit also aided and encouraged the unconstitutional taking of property protected by the Due Process Clause by allowing Breakthrough unbridled discretion to set the towing and storage fees, and then failing to send the SOS the notice necessary for the car owners to obtain judicial review of Breakthrough's excessive fees, which meant that the impoundments and attendant fees would never be challenged.  This also encouraged and allowed Breakthrough to continue to conduct its predatory and unconstitutional practices with absolute impunity.  Further, Detroit policymakers were aware of the

11

comprehensive and systemic bribery scheme employed by Breakthrough and did nothing to stop it, thereby condoning the illegal practice and furthering the conspiracy.  These customs/policies were a moving force behind the constitutional violations suffered by Plaintiffs.

21.   Defendant, HAMTRAMCK is a municipality located in Wayne County, Michigan.  It admitted to Plaintiffs that at all times relevant to this action, it had a custom/policy of its police officers willfully refusing to provide the notice of car impounds to the SOS, which is necessary to allow SOS to notify car owners of their right to challenge the legality of an impoundment of their vehicle and the associated impound fees.  This notice is a sine qua non for obtaining judicial review.  Hamtramck also failed to train its officers that cars parked on private lots could not be impounded without the specific notice required by the Michigan Vehicle Code (Code) and without a request for impoundment by the lot owner/lessor.  It failed to train its officers that under the Code, a vehicle could not be impounded from a private lot if the car owner or authorized user arrived before the car was removed from the lot. And it failed to train its officers that under the Code, whenever a car was impounded by a towing company, officers were required to enter the car into the LEIN system as abandoned to notify the Michigan Secretary of State (SOS) so the SOS could send the car owner a Notice of Abandoned Vehicle

form, which is the instrument that gives the car owners notice of their post-deprivation rights and the form that is a sine qua non for obtaining judicial review of the impound and impound fees.  Hamtramck also aided and encouraged the unconstitutional taking of property protected by the Due Process Clause by allowing Breakthrough unbridled discretion to set the towing and storage fees, and by  not sending the SOS the notice necessary for the car owners to obtain judicial review of Breakthrough's excessive fees, which meant that the impoundments and attendant fees would never be challenged. This encouraged Breakthrough and allowed it to conduct its predatory and unconstitutional practices with absolute impunity.  These customs/policies were a moving force behind the constitutional violations suffered by Plaintiffs.

22.   DPD Defendant JOHN DOES are employed by the City of Detroit in Wayne County, Michigan.  They are sued in their individual capacities.   Upon information and belief, some of these Defendants took bribes from Breakthrough, and all of them actively assisted it in the unconstitutional taking of property without due process of law by preventing the rightful owners and/or authorized users from taking possession of their property, and/or by actively assisting Breakthrough in taking the property despite the lack of notice required by law, and/or by aiding and encouraging the seizure of vehicles

when the Code's seizure requirements were not met and by willfully refus-
ing to provide notice to the SOS, which was necessary to inform the car
owners of their post-deprivation rights and to obtain notice and a hearing be-
fore a neutral arbiter to challenge the legality of the impoundment and the
associated impound fees.

23.   HPD Defendants JOHN DOES are employed by the City of Hamtramck in
Wayne County, Michigan. They are sued in their individual capacities.  Up-
on information and belief, some of these Defendants took bribes from
Breakthrough and all of them actively assisted it in the unconstitutional tak-
ing of property without due process of law by preventing the rightful owners
and/or authorized users from taking possession of their property, and/or by
actively assisting Breakthrough in taking the property despite the lack of no-
tice required by law, and/or by aiding and encouraging the seizure of vehi-
cles when the Code's seizure requirements were not met and by willfully re-
fusing to provide notice to the SOS which was necessary to inform the car
owners of their post-deprivation rights and to obtain notice and a hearing be-
fore a neutral arbiter to challenge the legality of the impoundment and the
associated impound fees.

24.   The unconstitutional practices referenced herein have been ongoing for at
least the last five years.

25.   Defendants' unconstitutional conduct caused Plaintiffs and other members of the class substantial injury, both economic and noneconomic as set forth below.

## CLASS ACTION

26.   Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

27.   Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, Count IX and Count X are brought as a class action pursuant to Rule 23 of the Federal Rule of Civil Procedure because:

    a.   The class of Plaintiffs is so numerous that joinder of all class members is impracticable;

    b.   There are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;

    c.   The claims or defenses of the representative parties are typical of the claims or defenses of the class;

    d.   The representative parties will fairly and adequately assert and protect the interests of the class; and

      e.  The maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

28.  The class representatives and the class members have been equally affected by Defendants' illegal, predatory, and rogue towing practices from September 21, 2015 to the present.

29.  The class representatives, the class members, and Defendants have a commonality of interest in the subject matter and remedy sought.

30.  If individual actions were required to be brought by each injured or affected member of the class, the result would be a multiplicity of actions creating a hardship to class members, Defendants, and the resources of the Court.

31.  A class action is an appropriate method for fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

## **INTRODUCTION**

32.  BREAKTHROUGH routinely tows and impounds legally parked vehicles without permission of the vehicle's owner and without direction or permission from the entity in ownership or control of the site from which the vehicle is towed.

33. This occurs at various businesses in the Cities of Detroit and Hamtramck, including, but not limited to, the businesses named as Defendants herein.

34. This illegal, exploitative, and predatory towing is routinely done without the pre-deprivation notice required by Michigan law, in violation of other provisions of Michigan law, and without providing the car owners any post-deprivation remedy.

35. Defendants have deprived, and continue to deprive, Plaintiffs and other similarly situated vehicle owners and secured parties of their property, their due process rights, and rights protected under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

## <u>MICHIGAN VEHICLE CODE</u>

36. MCL 257.252a governs when a car can be taken into custody (when it is by law deemed "abandoned"), defines when a car is deemed "abandoned" for the purposes of the statute, governs the penalties for abandoning a car, and the notice that must be provided to the individual whose car was taken into custody. It also governs the duties of the police agency which has jurisdiction over the location of the car taken into custody. Lastly, it governs the procedures for challenging the legality of the impoundment and the reasonableness of expenses charged for towing and storage, as well as bond requirements.

37.  Subsection (2) defines "abandoned".  It provides in relevant part:

> "As used in this section and sections 252b through 252l,
>
> "abandoned vehicle" means any of the following: (a) A
>
> vehicle that has remained on private property without the
>
> consent of the owner.

38.  If a car is abandoned under subsection (2)(a) because it has remained on private property without the lot owner's consent, the car can be taken into custody in two separate ways: If the lot owner notifies the police, the police can cause a towing company to take the car into custody  as an abandoned vehicle under subsection (4).  Alternatively, the lot owner can have the vehicle taken into custody as an abandoned vehicle by notifying an authorized towing agency under subsection (10)

39.  Subsection (4) provides:  **If the vehicle is an abandoned vehicle**, the police agency or the agency's designee may have the towing agency take the vehicle into custody.

40.  Subsection (5) provides in part: A police agency that has received a vehicle taken into custody as abandoned **shall do all of the following**: (b) **Within 24 hours after the vehicle is taken into custody, enter the vehicle as abandoned into the law enforcement information network, and notify the secretary of state through the law enforcement information network**

**that the vehicle has been taken into custody as abandoned.**

41.    Subsection (5) then lists the information that must be contained in the LEIN notice, which includes, among other things, the VIN, when the car was taken into custody, by whom, the business address of the current custodian and the court having jurisdiction over the custody.

42.    Subsection (10) provides in part:  If a vehicle has remained on private property without the consent of the property owner, the owner of the private property **may have the vehicle taken into custody as an abandoned vehicle** by contacting a local towing agency.

43.    Subsection 11 provides: Before removing the vehicle from private property, the towing agency shall provide notice by telephone, or otherwise, to a police agency having jurisdiction over the vehicle that the vehicle is being removed. **Within 24 hours after receipt of the notice from the towing agency, the police agency shall** determine if the vehicle has been reported stolen and **enter the vehicle into the law enforcement information network as an abandoned vehicle.**

44.    Subsection (12) then provides that within this same 24-hour period, the police agency shall provide to the secretary of state the exact same information as required by subsection(5)(b).

45.    However, MCL 257.252k provides that a vehicle cannot be taken into custo-

dy from a private lot unless the lot owner provides **notice** that an illegally parked vehicle is subject to be impounded.  Subsection (a) provides that "The notice shall be prominently displayed at each point of entry for vehicular access to the real property. If the real property lacks curbs or access barriers, not less than 1 notice shall be posted for each 100 feet of road frontage."

46.   MCL 256a(5)(c) and (13), respectively, set forth the duties of the Secretary of State (SOS) after receiving the LEIN notice of abandoned vehicle: Within 7 days after receiving notice . . .that the vehicle has been taken into custody, the secretary of state shall do both of the following:   Send to the last titled owner  . . . **notice that the vehicle is considered abandoned**. The form for the notice shall be furnished by the secretary of state. **Each notice form** shall contain the following information . . .   The address or approximate location from which the vehicle was taken into custody.   The date on which the vehicle was taken into custody.   The name and address of the police agency that had the vehicle taken into custody.    The name and business address of the custodian of the vehicle.   The procedure to redeem the vehicle. **The procedure to contest the fact that the vehicle is considered abandoned or the reasonableness of the towing fees and daily storage fees.  A form petition that the owner may file in person or by mail with the spec-**

20

**ified court that requests a hearing on the police agency's action.**

47.   The vast majority of car owners are unaware of their post-deprivation reme-
dy to seek judicial review of the impoundment and associated fees unless
they receive the Notice of Abandoned Vehicle form and the attached Petition
Regarding Impoundment form from the SOS.

48.   Before car owners can obtain judicial review, they **must** receive the Notice
of Abandoned Vehicle form from the SOS which is a sine qua non for ob-
taining judicial review and must be filed along with the Petition Regarding
Abandonment, and contains the information needed to fill out the petition.

49.   Plaintiff Vang attempted to challenge the legality of the tow and the
associated fees in 36th District Court without the Notice of Abandoned
Vehicle form, but the Court Clerk would not accept his Petition Regarding
Impoundment of Motor Vehicle for filing without the Notice of Abandoned
Vehicle.

50.   Before a car owner can obtain judicial review of the impoundment, he must
also post a bond in the amount of the towing and storage fees plus $40, see
MLC 257.252a (6) and (14).

51.   Since the towing company is always the adverse party when it comes to
challenging the impoundment fees, and often the adverse party when it
comes to challenging the legality of the impoundment, this means the towing

company – here, Breakthrough – would set the amount of bond an aggrieved car owner must post to seek judicial review of its own actions.

52. A municipality has the power to limit the discretion of the towing company in setting the amount of towing and storage fees, and thus the bond, through contracts that place a limit on the amount.

53. Hamtramck and Detroit gave Breakthrough unfettered discretion to set the towing and storage fees, and thus the bond, for obtaining judicial review.

54. MCL 257.252d provides further restrictions on towing vehicles from a private lot when the car owner did not have the lot owner's consent to park there. It provides in relevant part: **if the owner or other person who is legally entitled to possess a vehicle to be towed or removed arrives at the location where the vehicle is located before the actual towing or removal of the vehicle, the vehicle shall be disconnected from the tow truck**, and the owner or other person who is legally entitled to possess the vehicle may take possession of the vehicle and remove it without interference upon the payment of the reasonable service fee, for which a receipt shall be provided.

55. The unconstitutional acts in this case include, but are not limited to: towing vehicles without the notice required by Michigan law; towing legally parked vehicles; seizing vehicles under the authority of the Michigan Vehicle Code when the Code's requirements for seizure are not met, towing vehicles when

the vehicle owners were present before their cars were removed from the private lots and preventing the car owners from taking possession of their property, failing to provide the any notice of abandoned vehicle to state authorities after cars were impounded, which deprived the car owners of their rights to a post-deprivation hearing; failing to provide **timely** notice of abandoned vehicle to state authorities, which deprived the car owners of their rights to a post-deprivation hearing at a meaningful time; placing unconstitutional police "holds" on impounded vehicles without any legal basis for doing so; charging and requiring excessive towing and storage fees for the return of impounded vehicles; and unilaterally and arbitrarily determining towing and storage fees and then demanding pre-payment of such fees from vehicle owners as a prerequisite to such aggrieved parties obtaining a judicial hearing to challenge vehicle impounds or the amount of fees they are being charged.

56. These unconstitutional practices were exacerbated by the customs/policies of Defendants Detroit and Hamtramck. There was a systemic failure to provide the notice required that would allow car owners to obtain judicial review of the illegal impoundment of their cars and the grossly excessive impound fees imposed. Of the 138 car owners who have contacted undersigned counsel who had their cars illegally towed in Detroit, only 33 received the notice that

would allow them to obtain judicial review and none of these 33 received timely notice. Of the 12 car owners whose cars were illegally towed in Hamtramck, none received the notice. In fact, Hamtramck admitted to Plaintiffs that it has a custom/policy of not providing the notice required by the Code and necessary to allow car owners to judicially challenge the impoundment because the cars were not abandoned enough.

57. These unconstitutional practices were also exacerbated by the customs of Defendants Detroit and Hamtramck through the systemic failure to properly train their officers that they were required to enter every towed car as "abandoned" on the LEIN system so that the SOS could send a notice of abandoned vehicle form to the car owner along with the forms necessary to obtain judicial review, and through the failure to train their police officers as to when a car may be towed under the Michigan Vehicle Code.

58. BREAKTHROUGH also demands and requires hundreds of dollars to be paid in *cash only*, to release the vehicle to its owners for these unauthorized and illegal tows. This allows Breakthrough to pay the hundreds of thousands of dollars in bribes to various private and government actors, and to launder the illegally obtained money through the payment of "black money" to its employees and/or agents.

59. In some cases, BREAKTHROUGH does not provide a receipt for these cash

transactions, which allows it to deny the extortionate rates.

60. Many of the lots targeted and patrolled by BREAKTHROUGH are located in areas populated by a large number of minority, immigrant, low-income residents and students.

61. BREAKTHROUGH's illegal and predatory towing practices, which have been the subject of various reports, investigations, news stories and complaints, not only victimize Plaintiffs and other similarly situated individuals whose vehicles have been improperly towed but threaten commerce in the areas in which they operate. Businesses located at, or near, lots where BREAKTHROUGH operates lose customers who are unwilling to park for fear that their vehicle may disappear at any moment as a result of rogue towing practices, and then they will be forced to pay a large cash ransom to retrieve their vehicle.

62. Plaintiffs and other similarly situated individuals incur economic damages and costs which include, but are not limited to: unreasonable and excessive towing fees, additional fees for retrieving property from the impounded vehicles, additional fees for storage even when the delay is caused by Defendants, costs of replacement transportation, and costs of repairing vehicles which were damaged by BREAKTHROUGH in the process of towing the vehicle.  Plaintiffs' noneconomic damages include the stress and humiliation

attendant to having their cars illegally towed, having to obtain alternative transportation, having to pay exorbitant ransoms to retrieve their cars, having no recourse against the illegal practices and having their constitutional rights denied.

63.    In addition to the costs associated with retrieving Plaintiffs' vehicles, they remain obligated to pay the expenses associated with vehicle ownership, such as lease or loan payments and insurance premiums during a period in which they did not have access to or control over their vehicles.

64.    As of January 1, 2019, BREAKTHROUGH's Michigan State Commercial Vehicle Enforcement Division license was not renewed or otherwise revoked.

65.    No later than February 14, 2019, the Michigan State Police notified the Hamtramck Police Department that BREAKTHROUG did not have a license to operate and the tow truck drivers should be ticketed if found towing vehicles within Hamtramck.

66.    BREAKTHROUGH continued to tow vehicles without a license to operate and continued to take the cars to the Detroit and Hamtramck Police Departments for processing.

67.    DETROIT and DPD John Does aided, encouraged and otherwise allowed BREAKTHROUGH to tow vehicles without legal authority or license to op-

erate when they processed impounded vehicles at local precincts both before and after Breakthrough's license was revoked.

68.   Hamtramck and HPD John Does aided, encouraged and otherwise allowed, BREAKTHROUGH to tow vehicles without legal authority or a license to operate when they processed impounded vehicles at HPD both before and after Breakthrough's license was revoked.

69.   The DPD JOHN DOES and the HPD JOHN DOES, respectively, conspired with, aided, and otherwise allowed, BREAKTHROUGH to violate the constitutional right of Plaintiffs and the potential class members when they received bribes, kickbacks or other incentives from Breakthrough.   One witness claims a Breakthrough gave a Hamtramck police officer money and a Breakthrough driver admitted to a car owner whose car was illegally towed and who threatened to call DPD that the Detroit Police received a payment for every tow.

## PLAINTIFF OLIVIA ROBERTSON FACTS

70.   Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

71.   Plaintiff OLIVIA ROBERTSON owned or operated a vehicle which was legally parked in a parking lot near CVS #8137, located on the corner of Holbrook Road and Mitchell Street in Hamtramck, Michigan on or about April 5, 2018.

72.   CVS #8137 (WOODWARD DETROIT CVS, LLC) is overseen and/or controlled by CVS CAREMARK CORPORATION.

73.   On or about April 5, 2018, Plaintiff OLIVIA ROBERTSON was patronizing Bumbo's in Hamtramck, Michigan across the street from where her vehicle was parked.

74.   At the time of Plaintiff's patronage on April 5, 2018, no signs displayed by CVS or BREAKTHROUGH TOWING, LLC were visible where Plaintiff OLIVIA ROBERTSON'S vehicle was parked.

75.   At the time of Plaintiff's patronage on April 5, 2018, no signs displayed by CVS or BREAKTHROUGH TOWING, LLC appeared at each point of entry to the real property, either off Holbrook Road or Mitchell Street.

76.   Breakthrough bribed CVS employees to spot parked cars in the CVS lot and call Breakthrough, so it could illegally tow the cars from the lot, despite the insufficient notice required by Michigan law.

77.   While Plaintiff ROBERTSON was at Bumbo's on or about April 5, 2018, a Bumbo's employee notified the patrons that a BREAKTHROUGH tow truck was in the parking lot across the street.

78.   After the announcement, ROBERTSON went to the parking lot across the street where her vehicle was parked to find a BREAKTHROUGH tow truck driver preparing to attach her vehicle to the tow truck.

79.   When she arrived at the parking lot, Plaintiff's vehicle had not yet been attached to the tow truck.

80.   MCL 257.252d(k)(2) provides in relevant part. "if the owner or other person who is legally entitled to possess a vehicle to be towed or removed arrives at the location where the vehicle is located before the actual towing or removal of the vehicle, the vehicle shall be disconnected from the tow truck, and the owner or other person who is legally entitled to possess the vehicle may take possession of the vehicle and remove it without interference upon the payment of the reasonable service fee, for which a receipt shall be provided."

81.   At this time, the driver of the BREAKTHROUGH tow truck told ROBERTSON that they had to tow her vehicle, despite Plaintiff being present and demanding a return of her vehicle, in clear violation of MCL § 257.252(d).

82. When the driver continued with the tow, ROBERTSON called the Hamtramck Police Department to report her vehicle being improperly and illegally towed.

83. Two police cars and three HPD John Doe defendants arrived at the scene and, despite the lack of notice required by law and although she was on the scene before her car was removed, prevented Plaintiff from retrieving her car, telling ROBERTSON that her vehicle had to be towed by BREAKTHROUGH to the police station and then taken to a storage location.

84. Breakthrough then towed the car to HPD where it was processed.

85. HPD John Doe, according to Hamtramck's custom/policy, willfully refused to enter the car into the LEIN system as abandoned.

86. As a result, Robertson never received a Notice of Abandoned Vehicle form from the SOS.

87. Later that evening, ROBERTSON and a friend went to the BREAKTHROUGH office located at 1501 W. Lafayette, Detroit, Michigan 48216 to retrieve her vehicle.

88. There, ROBERTSON was told by a Breakthrough agent that she would have to pay $375.00 cash to retrieve her vehicle.

89.    Although there were stickers or signs advising that credit cards were accepted as a form of payment, Robertson was told that cash payment was mandatory. She and her friend had to leave Defendants' office to obtain the required cash.

90.    To retrieve her vehicle, ROBERTSON was required to pay $420.00 in cash, which included additional fees because her Michigan car registration was still in the car when it was illegally towed and BREAKTHROUGH would not allow her to access her vehicle to retrieve her Michigan Registration without paying the additional fee, and Robertson had to present the registration to retrieve her car.

91.    MCL 252a(19) provides in relevant part: "The custodian of the vehicle shall allow the owner of the vehicle to inspect the vehicle and retrieve personal property from the vehicle without paying a fee for the first visit."

92.    Desperately in need of her vehicle, ROBERTSON paid the unlawful, unreasonable and excessive cost.

93.    ROBERTSON was not given a receipt by BREAKTHROUGH.

94.    ROBERTSON was then told her vehicle was not being stored at the BREAKTHROUGH office, but rather, at another storage lot located elsewhere in Detroit, Michigan.

95.   ROBERTSON was then told that she would need to follow a BREAKTHROUGH agent to retrieve her vehicle from the remote storage lot.

96.   To date, Plaintiff OLIVIA ROBERTSON has not received a receipt, invoice for the amount owed, or a Notice of Abandoned Vehicle from the Michigan Secretary of State.  Therefore, she is unable to contest the legality of the tow or the reasonableness of the tow fees in the 31st District Court.

97.   Generally, car owners will not be notified of their right to judicial review of the impoundment of their vehicle and associated costs, unless they receive a notice from the Michigan Secretary of State and the accompanying and the Petition Regarding Impoundment of Motor Vehicle. **Exhibit A**. This form requires the car owner to list the date he/she received the Notice of Abandoned Vehicle form from the Secretary of State.  *See* **Exhibit A, paragraph 4**.

98.   Before a car owner can challenge whether their vehicle was properly deemed abandoned, *see* **Exhibit A, paragraph 1(a)**, they must establish that their vehicle was deemed abandoned, when it was deemed abandoned and by whom, *see* **Exhibit A, paragraph 4**.

99.   Thus, before car owners can obtain judicial review of the impoundment of their car and/or associated costs, they must receive a Notice of Abandoned Vehicle form from the Michigan Secretary of State which provides the information necessary to fill out the petition and establishes that the car was "taken into custody as an abandoned vehicle." **Exhibit B**.

100.  The only way the Secretary of State is able to provide the notice of abandoned vehicle to the car owner is if it is notified by the law enforcement agency with jurisdiction over the vehicle that the vehicle was taken into custody as "abandoned."   This is done via the LEIN system.

101.  These Defendants illegally seized Plaintiff's property when they impounded her car when the statutory requirements for impoundment were not met, in violation of the Fourth Amendment, took her property without the pre-deprivation notice required by law, in violation of her due process rights under the Fourteenth Amendment, deprived her of her right to post-deprivation notice and a hearing before a neutral arbiter to challenge the impoundment and associated fees in violation of her due process rights under the Fourteenth Amendment, deprived her of her right to access to the courts in violation of the First Amendment, and charged her  excessive fines in violation of the Eighth Amendment.

102. The lack of Notice of Abandoned Vehicle was a direct result of Defendant Hamtramck's policy/custom of willfully refusing to provide notice of abandoned vehicle to the Secretary of State through the LEIN system when cars are towed from private lots.

103. As a result of these Defendants' actions, Plaintiff OLIVIA ROBERTSON and others similarly situated, known and unknown, suffered economic and noneconomic damages as described above

## PLAINTIFF LENG VANG FACTS

104. Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

105. Plaintiff LENG VANG owned a vehicle which was legally parked on a private lot off Willis Street between Woodward Avenue and Cass Avenue, abutting the parking lot of Defendant MIDTOWN LIQUOR & DELI, in Detroit, Michigan on or about September 14, 2018.

106. At all relevant times hereto, no signs were displayed by BREAKTHROUGH or MIDTOWN, or the actual lot owner at anywhere in the parking lot where Vang's vehicle was parked.

107. In addition to this lack of notice of potential towing, on September 14, 2018, BREAKTHROUGH did not have the consent or permission of the lot owner to tow from the lot where VANG'S vehicle was parked.

34

108. Despite the lack of notice and consent of the lot owner, Breakthrough impounded Plaintiff's car.

109. After Breakthrough impounded Vang's car, it notified the DPD Third Precinct of the impound, and on information and belief, filled out an impound form which it gave to DPD Defendant John Doe.

110. Plaintiffs' beliefs are based on a witness with direct knowledge of the practices of Breakthrough when towing cars from anywhere in Detroit's Midtown District.

111. Plaintiff Vang received a phone call and was informed by a concerned citizen that Breakthrough towed his car and severely damaged his car during the tow.

112. Vang then called the DPD Third Precinct and informed the officer whom he talked to that Breakthrough wrongfully towed his car.  He was informed that since he was not reporting a crime, the Detroit Police would do nothing.

113. Defendant John Doe also willfully refused to enter the car into the LEIN system as an abandoned vehicle, as required by the Michigan Vehicle Code.

114. After initially denying it towed Vang's car, and after much delay in locating his vehicle and repeated phone calls from Vang, VANG was finally contacted by a BREAKTHROUGH agent and told that in order to retrieve his vehicle, he would need to pay $470.00, and that he must pay in cash only.

115. Breakthrough did not inform Vang about any damage to his vehicle, or that Breakthrough had sent it for repairs to a mechanic unilaterally chosen by Defendant Dickerson.

116. VANG was informed that the BREAKTHROUGH's office was open "24/7," but that he would need to wait to retrieve his car until the boss called him and the boss would not be in until 11:00 PM that evening.

117. However, VANG was not contacted by BREAKTHROUGH that evening.

118. VANG returned to BREAKTHROUGH's office the following morning but was advised that he could not retrieve his vehicle.

119. A BREAKTHROUGH agent informed Vang that his vehicle had been damaged by BREAKTHROUGH during the tow and was being kept at a separate location, Livernois Oil Express in Detroit, while it was being repaired.

120. VANG did not authorize or consent in any way to his car being relocated from Defendants' possession or to the method and manner of the repairs, which included further delay and cost because the facility ordered the "wrong part."

121. Vang has still not received a Notice of Abandoned Vehicle and has been deprived of his post-deprivation rights to notice and a hearing to judicially challenge the taking of is property.

122. These Defendants illegally seized Plaintiff's property when they impounded his/her car when the statutory requirements for impoundment were not met, in violation of the Fourth Amendment, took his/her property without the pre-deprivation notice required by law, in violation of his/her due process rights under the Fourteenth Amendment, deprived her/him of the right to post-deprivation notice and a hearing to challenge the impoundment and associated fees in violation of his/her due process rights under the Fourteenth Amendment, deprived him/her of her right to access to the courts in violation of the First Amendment, and charged her excessive fines in violation of the Eighth Amendment.

123.  The lack of Notice of Abandoned Vehicle was a direct result of Defendant Detroit's policy/custom of willfully refusing to provide notice of abandoned vehicle to the Secretary of State through the LEIN system when cars are towed from private lots.

124.  As a result of these Defendants' actions, VANG and others similarly situated, known and unknown, suffered economic and noneconomic damages as described above

### PLAINTIFF TIMOTHY BATES FACTS

125.  Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

126.  Plaintiff TIMOTHY BATES was an authorized driver of a vehicle which was legally parked in the McDonald's parking lot owned and operated by Defendant VIRGIRILLI MANAGEMENT in Detroit, Michigan on or about August 2, 2018.

127.  VIRGIRILLI MANAGEMENT is overseen and/or controlled by McDONALD'S CORPORATION.

128.  Plaintiff TIMOTHY BATES was an employee and/or independent contractor for the mobile phone app, "Door Dash," and made food deliveries for customers who ordered online from fast food restaurants, including from Defendant VIRGIRILLI MANAGEMENT.

129. As described in the above paragraphs, which are incorporated by reference, McDonalds' employees and managers and agents were engaged with Breakthrough in a comprehensive and systemic bribery scheme whereby McDonalds' managers and employees would call Breakthrough drivers waiting nearby to come and tow the legally parked cars of McDonalds' own patrons in exchange for up to $100 per car.

130. Plaintiff TIMOTHY BATES was picking up his second Door Dash order of that day from Defendant VIRGIRILLI MANAGEMENT when his vehicle was illegally and improperly towed from the McDONALD'S #20727 parking lot.

131. Upon arriving to Defendant VIRGIRILLI MANAGEMENT's parking lot, TIMOTHY BATES went inside the restaurant, used the restroom, and waited in line at the register inside to pick up his Door Dash order.

132. Once BATES picked up the food order and walked outside to his vehicle, he saw that a BREAKTHROUGH driver had hooked up his vehicle to the tow truck. When BATES demanded that it be released, the driver told him he could not release the vehicle because it was already hooked up.

133. The driver then told Bates to speak with an individual named "Alize" inside the McDONALD'S #20757 regarding his vehicle.

134.   BATES went back inside McDONALD'S #20757 and asked to speak with "Alize," but he was told by another employee that she had left for the day.

135.   When he returned outside, his car was being towed down Woodward.

136.   After Breakthrough impounded Bates' car, it notified the DPD Third Precinct of the impound, and on information and belief, filled out an impound form which it gave to DPD Defendant John Doe.

137.   Plaintiffs' beliefs are based on a witness with direct knowledge of the practices of Breakthrough when towing cars from anywhere in Detroit's Midtown District.

138.   DPD Defendant John Doe willfully failed to enter the car into the LEIN system as an abandoned vehicle, as required by the Michigan Vehicle Code.

139.   When BATES called Breakthrough, he was informed that it closed at 11:00 P.M. (despite alleging they are a "24-hour-a-day towing" company on their website) and he would need to pay cash to retrieve his vehicle before 11:00 P.M. to avoid incurring additional fees.

140.   BATES was ultimately forced to pay $420.00 cash to retrieve his vehicle, only hours after it was towed, including a $25.00 "after hours" fee.

141.   To date, Plaintiff TIMOTHY BATES has not received a Notice of Abandoned Vehicle and thus was not been able to file an Abandoned Vehicle Petition in 36th District Court to challenge this tow and/or the reasonableness of the towing/storage fees.

142.   Defendants illegally seized Plaintiff's property when they impounded his/her car when the statutory requirements for impoundment were not met, in violation of the Fourth Amendment, took his/her property without the pre-deprivation notice required by law, in violation of his/her due process rights under the Fourteenth Amendment, deprived of her right to post-deprivation notice and a hearing to challenge the impoundment and associated fees in violation of her due process rights under the Fourteenth Amendment, deprived her of her right to access to the courts in violation of the First Amendment, and charged her  excessive fines in violation of the Eighth Amendment.

143.   As a result of DEFENDANTS' actions, Plaintiff TIMOTHY BATES and others similarly situated, known and unknown, suffered damages as defined above.

144.   The lack of Notice of Abandoned Vehicle was a direct result of Detroit's custom of willfully refusing to provide notice of abandoned vehicle to the Secretary of State through the LEIN system when cars are towed from pri-

vate lots.

## **PLAINTIFF ASHLEY COLLINS FACTS**

145.  Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

146.  On February 5, 2019, Plaintiff ASHLEY COLLINS' vehicle was parked at the McDONALD'S #20757 between the hours of 9:00pm and 10:00pm.

147.  As described in the above paragraphs, which are incorporated by reference, McDonalds' employees and managers and agents were engaged with Breakthrough in a comprehensive and systemic bribery scheme whereby McDonald's managers and employees would call Breakthrough drivers waiting nearby to come and tow the legally parked cars of McDonald's own patrons in exchange for upwards of $100 per car.

148.  No notice or signs regarding the potential of towing were visible at the entry way to the parking lot when Mr. Collins pulled into the lot, nor were any signs visible near the parking space he pulled into on the north side of the lot directly next to a handicapped parking space (northeast corner of the lot).

149.  When Mr. Collins returned to the parking space at approximately 10:00 p.m. on the evening of February 5, 2019, his vehicle had been towed by Breakthrough.

150.   As of January 1, 2019, BREAKTHROUGH did not have a valid license to operate within the CITY OF DETROIT and was not licensed at the time Mr. Collins' vehicle was towed.

151.   After Breakthrough impounded Collins' car, it notified the DPD Third Precinct of the impound, and on information and belief, filled out an impound form which it gave to DPD Defendant Officer John Doe.

152.   Plaintiffs' beliefs are based on a witness with direct knowledge of the practices of Breakthrough when towing cars from anywhere in Detroit's Midtown District.

153.   DPD Defendant John Doe willfully failed to enter the car into the LEIN system as an abandoned vehicle, as required by the Michigan Vehicle Code.

154.   Collins later determined that Breakthrough towed his vehicle.

155.   When Collins called BREAKTHROUGH at 10:38pm, he was informed by the woman who answered the phone that Breakthrough Towing was closed, and he would have to retrieve his car at 9:00am the following morning.

156.   Collins was originally told that we would have to pay $375.00 to retrieve his vehicle by a man who told him his name was "Mike."

157.   However, "Mike" then told Mr. Collins that because his vehicle was kept overnight, he would have to add a $20 "overnight fee," bringing the total for Mr. Collins to pay to retrieve his vehicle up to $395.00.

158. When Mr. Collins attempted to pay by credit card, he was told that he could not, and the business was "cash only," despite signage to the contrary, so he was forced to walk to a nearby gas station to use the ATM.

159. Mr. Collins asked "Mike" when he could expect a Notice of Abandoned Vehicle, but "Mike" said that because his vehicle was picked up within 24 hours, he would not receive one because it would not be "in the system."

160. Mr. Collins then had to go to another location to retrieve his vehicle after he had paid and signed for the vehicle and followed behind "Mike" in order to get there. Mike was driving a grey 2018 Dodge Charger license plate# DVV9585.

161. Mr. Collins witnessed "Mike" unlock a gate with a key to get inside and saw an abandoned structure with overgrown grass and broken glass.

162. When Mr. Collins attempted to leave with his vehicle, it was stuck in the mud in the location where it was left by the tow truck.

163. Additionally, Mr. Collins' vehicle was damaged during the tow and left with a large scratch on the back bumper.

164. To date, Plaintiff Collins has not received a Notice of Abandoned Vehicle and thus was not been able to file an Abandoned Vehicle Petition in 36th District Court to challenge this tow and/or the reasonableness of the towing/storage fees.

165.   Defendants illegally seized Plaintiff's property when they impounded his/her car when the statutory requirements for impoundment were not met, in violation of the Fourth Amendment, took his/her property without the pre-deprivation notice required by law, in violation of his/her due process rights under the Fourteenth Amendment, deprived of her right to post-deprivation notice and a hearing to challenge the impoundment and associated fees in violation of her due process rights under the Fourteenth Amendment, deprived her of her right to access to the courts in violation of the First Amendment, and charged her  excessive fines in violation of the Eighth Amendment.

166.   As a result of DEFENDANTS' actions, Plaintiff ASHLEY COLLINS and others similarly situated, known and unknown, suffered damages as described above.

167.   The lack of Notice of Abandoned Vehicle was a direct result of Detroit's custom of willfully refusing to provide notice of abandoned vehicle to the Secretary of State through the LEIN system when cars are towed from private lots.

## **PLAINTIFF JUSTIN KANDAH FACTS**

168.   Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

169. Justin Kandah's 2016 Dodge Charger was towed by Breakthrough in the late hours of Friday, January 18, 2019 into Saturday, January 19, 2019, at which time Breakthrough did not have a valid license to operate in the State of Michigan.

170. His vehicle was towed off the public street on W. Forest Avenue, between Second and Third Avenues, at approximately 1:00am after leaving Third Street Bar at 4626 3rd Ave, Detroit, Michigan 48201 where he was a customer.

171. Mr. Kandah was parked legally on the street.

172. Mr. Kandah contacted Breakthrough Towing after discovering the phone number on a sign at University Village Market located directly across from Third Street Bar.

173. The Breakthrough tow truck which towed his car had the license plate BB7404 was driven by an employee named "Mickey."

174. "Mickey" demanded that Kandah pay $500 in cash to retrieve his vehicle.

175. "Mickey" forced Mr. Kandah and his friend to go to multiple ATMs, despite an ongoing blizzard because they were approximately $40 short.

176. Mr. Kandah suffers from Level 4 asthma and "Mickey" would not let him retrieve his inhaler from inside his vehicle.

177. "Mickey" also would not let Mr. Kandah, or his friend, retrieve their jackets from the car, and the temperature was below freezing with multiple inches of snow falling.

178. "Mickey" also would not let Mr. Kandah retrieve his emergency cash from his car to pay for the tow.

179. Mr. Kandah was verbally threatened by "Mickey," who, when denying access to Mr. Kandah's vehicle to retrieve these items, stated "I don't care if you die out here, motherf***er, f*** you."

180. Mr. Kandah had to contact Uber, a ride sharing app, to meet the tow truck driver "Mickey" at 1501 Lafayette in Detroit.

181. The Uber driver, Andrell Thomas, loaned Mr. Kandah approximately $40 so he could retrieve his vehicle.

182. During the tow of the vehicle, Breakthrough damaged the rear bumper of Kandah's car.

183. After Breakthrough impounded Kandah's car, it notified the DPD Third Precinct of the impound, and on information and belief, filled out an impound form which it gave to DPD Defendant Officer John Doe.

184. Plaintiffs' beliefs are based on a witness with direct knowledge of the practices of Breakthrough when towing cars from anywhere in Detroit's Midtown District.

185.  DPD Defendant John Doe willfully failed to enter the car into the LEIN system as an abandoned vehicle, as required by the Michigan Vehicle Code.

186.  To date, Kandah has not received a Notice of Abandoned Vehicle and thus was not been able to file an Abandoned Vehicle Petition in 36th District Court to challenge this tow and/or the reasonableness of the towing/storage fees.

187.  These Defendants illegally seized Plaintiff's property when they impounded his/her car when the statutory requirements for impoundment were not met, in violation of the Fourth Amendment, took his/her property without the pre-deprivation notice required by law, in violation of his/her due process rights under the Fourteenth Amendment, deprived of her right to post-deprivation notice and a hearing to challenge the impoundment and associated fees in violation of her due process rights under the Fourteenth Amendment, deprived her of her right to access to the courts in violation of the First Amendment, and charged her excessive fines in violation of the Eighth Amendment.

188.  As a result of DEFENDANTS' actions, KANDAH and others similarly situated, known and unknown, suffered damages as described above.

189.   The lack of Notice of Abandoned Vehicle was a direct result of Detroit's custom of willfully refusing to provide notice of abandoned vehicle to the Secretary of State through the LEIN system when cars are towed from private lots.

## PLAINTIFF KAREN ABKE FACTS

190.   Karen Abke's 2011 Ford Fusion was towed from a lot in Hamtramck, Michigan located at or near 11444 Joseph Campau Avenue on March 2, 2019.

191.   Ms. Abke parked her vehicle in that parking lot around 11:00 PM on March 2, 2019.

192.   When she returned to the lot in which she left her vehicle around midnight on March 3, 2019, her vehicle was gone.

193.   The lot contained no signs giving proper notice of a potential impound.

194.   Ms. Abke panicked, as she believed her vehicle was stolen because she did not see any towing signs warning her that her vehicle could be towed if she parked in the parking lot.  She was alone in the cold, crying on the sidewalk.

195.   Ms. Abke immediately contacted the Hamtramck Police Department.  A woman officer answered and before Ms. Abke imparted any information about the make and model of her vehicle, the woman asked, "You have the silver Fusion?"

196. The officer also told Ms. Abke that her vehicle had already been processed by HPD and that it was on its way to the Breakthrough Towing lot in Detroit.

197. This was a month after the Michigan State Police informed Hamtramck that Breakthrough no longer had a license to tow vehicles in the State of Michigan.

198. When Ms. Abke asked the woman what she could do and how her vehicle could have been towed without notice, the woman laughed dismissively and stated, "if you do not like it, you can contact the Better Business Bureau and that is all I can tell you."

199. HPD Defendant John Doe willfully refused to enter Abke's vehicle into the LEIN system as abandoned.

200. After Abke got off the phone with the HPD, she called Breakthrough. After no one at Breakthrough Towing answered her calls, she received a call from a random cellphone number. A male voice on the other line confirmed that her vehicle had been taken by stating, "yeah, I got your car."

201. The hours listed for Breakthrough Towing on the internet said they would be open at 9:00 AM, but no one was at the office to process the retrieval of Ms. Abke's vehicle until approximately noon on March 3, 2019.

202. Abke was charged $445.00 by Breakthrough Towing, which included a $20

fee for "storage" overnight, a $25 fee for having her proof of insurance inside her vehicle and another $25 for having her vehicle registration inside her vehicle.

203.  She was not given an opportunity to retrieve anything from her vehicle without paying a fee, in clear violation of MCL § 257.252(a)(19).

204.  Ms. Abke was forced to pay cash to retrieve her vehicle, despite the credit card signs displayed at the Breakthrough Towing office.

205.  To date, Ms. Abke has not received a Notice of Abandoned Vehicle form to protest her tow in the 31st District Court.

206.  These Defendants illegally seized Plaintiff's property when they impounded his/her car when the statutory requirements for impoundment were not met, in violation of the Fourth Amendment, took his/her property without the pre-deprivation notice required by law, in violation of his/her due process rights under the Fourteenth Amendment, deprived of her right to post-deprivation notice and a hearing to challenge the impoundment and associated fees in violation of her due process rights under the Fourteenth Amendment, deprived her of her right to access to the courts in violation of the First Amendment, and charged her  excessive fines in violation of the Eighth Amendment.

207.  The lack of Notice of Abandoned Vehicle was a direct result of Defendant

Hamtramck's policy/custom of willfully refusing to provide notice of aban-

doned vehicle to the Secretary of State through the LEIN system when cars

are towed from private lots.

208. As a result of these Defendants' actions, ABKE and others similarly situat-

ed, known and unknown, suffered economic and noneconomic damages as

described above.

## ADDITIONAL INSTANCES OF HAMTRAMCK'S FAILURE TO TRAIN

209. Plaintiffs, by reference, incorporate the preceding paragraphs as though fully

set forth herein.

210. On April 14, 2018, during a conversation with Brian Krawczyk, an owner of

Bumbo's Bar, had a conversation with two Hamtramck police officers

regarding a Breakthrough driver that came to the CVS #8137 parking lot to

tow two vehicles.

211. The prospective class member vehicle owners went to their vehicles to move

them prior to the vehicles being hooked up to the tow truck.  The Break-

through driver pulled his truck behind their vehicles to block them in and

prevent them from moving.  The driver refused to allow the vehicle owners

to move their cars and proceeded to hook up the vehicles to the tow truck

and tow them away.

212. One officer told Mr. Krawczyk that once a tow truck driver makes a decision to tow a vehicle "it's a done deal," advising him that the tow truck drivers do not need to release a vehicle where the owner presents themselves prior to the vehicle being towed.  This statement is in direct contradiction to MCL § 257.252(d)(2) and demonstrates inadequate training about the Michigan Vehicle Code.

213. The officer continued, "as far as [the tow truck driver] having to drop it, or them having to allow you to take your vehicle, they *may* allow you to take your vehicle, they *may* drop it for a price…they are within their rights to take your vehicle…it's not they *shall*, it's they *may* allow you to take your vehicle." This statement is in direct contradiction to MCL § 257.252(d)(2) and demonstrates inadequate training about the Michigan Vehicle Code.

214. Mr. Krawczyk stated that it was unfair to tow vehicles from the CVS #8137 parking lot because there was not proper signage complying with MCL § 257.252(k) to warn Plaintiffs and others that their vehicles may be towed. The officer responded, "a lot of places do not have [signs] at every entrance. I can tell you Town Center doesn't have them at every entrance either.  You know, it's all private property…I agree, on that dumpster is not the best place to put it".  This statement is in direct contradiction to the Code and demonstrates inadequate training about the Michigan Vehicle Code.

215. Mr. Krawczyk also informed the officers that the tow truck driver made repeated threats to him when he attempted to inform the tow truck driver that he must release the vehicles, as the vehicle owners were present before the vehicles were hooked up to the tow truck.  The threats included, "I will f**king kill you," "my name is Killer," and "you will come up missing, motherf**ker."

216. On April 29, 2018, a potential female class member called HPD regarding her vehicle that was towed by Breakthrough and further reported that the tow truck driver tried to run her over.  When HPD officers arrived at the parking lot from which her vehicle was towed, she told them she did not know what towing company took her vehicle.  An officer responded, "we know who they are."

217. One of the HPD officers added, "[t]he way [Breakthrough operates] is…once they start hooking them up, there is nothing that can be done." This statement is in direct contradiction to the Code, and demonstrates inadequate training about the Michigan Vehicle Code

218. The officer further explained, "when they picked it up from here, they took it to the station, and it was impounded."

219. On April 6, 2018, HPD was dispatched to CVS #8137 after the owner of a vehicle called the police when the Breakthrough tow truck driver refused to

release his vehicle.

220. When the Hamtramck officers arrived, the owner of the vehicle was present and the vehicle was on the bed of the tow truck, but it has not yet been removed from the property.

221. Before doing any investigation, the HPD officer asked who the tow truck driver is and the driver responded, "we tow these cars all the time. I don't know if you see us come down."  The officer responded, "Yeah I know, yeah, you're good,".

222. When the owner of the vehicle told the officer that he arrived at his vehicle before it had been hooked up to the tow truck, the officer replied, "I don't have the authority to do anything.  If I could tell them 'hey bro, they're going to throw you $50 bucks can you pull the car off the truck?' If I could tell them that, I would make it happen for you just to avoid all this, but I can't do that."  This statement is in direct contradiction of the Code and demonstrates inadequate training about the Michigan Vehicle Code.

223. The officer then asked the tow truck driver what it would cost for Breakthrough to release the vehicle from the tow truck.  The tow truck driver replied that the owner cannot pay money to have their vehicle released and that she had to take the vehicle to the police station, and it had to go through the "impound process."  The driver added that the Breakthrough drivers are

not authorized to release the vehicle, to which the officer said, "okay." This agreement with the Breakthrough driver's statement is in direct contradiction to the Code, and demonstrates inadequate training about the Michigan Vehicle Code

224. The HPD police officer explained to the vehicle owner that despite him being present at his vehicle before it had been hooked up to the tow truck, the tow truck driver could tow the vehicle no matter what because it was on "private property." These statements and actions are in direct contradiction to the Code and demonstrate inadequate training about the Michigan Vehicle Code.

225. HAMTRAMCK admits that it is not providing the post-deprivation notice required under 257.252a(5), (11) and (12) because officials do not deem the vehicles towed from the Hamtramck to be abandoned.

226. DETROIT and the HAMTRAMCK were on notice of BREAKTHROUGH's unconstitutional and illegal towing practices because victims of the rogue towing scheme and potential class members made repeated complaints and reports to their respective police departments and respective cities.

227. BREAKTHROUGH and Dickerson (a) were encouraged by DETROIT and HAMTRAMCK to tow, hold, and exercise the discretion of when to release vehicles; (b) have a close relationship and are pervasively intertwined with

law enforcement operations pursuant to customs, and policies; (c) have been granted de facto authorization and discretion by the DETROIT and HAMTRAMCK to determine whether vehicles should be impounded, and unilateral authority to determine the amount charged to the car owners to se-cure the release of vehicles; (d) determine the bond required to challenge the tow in a district court by unilaterally and arbitrarily determining the towing and storage fee charged to Plaintiffs and others similarly situated; and (e) were given the right to determine whether a vehicle was parked illegally or not by DETROIT and HAMTRAMCK.

228.  Detroit and Hamtramck Police departments, through respective JOHN DOE employees, when notified of a person who believes their vehicle to be miss-ing and/or improperly towed, fail to investigate the matter, or even create a police report of the incident, thus condoning and encouraging the illegal and unconstitutional acts of Dickerson and Breakthrough.

229.  One of Breakthrough's drivers told a car owner whose car was illegally towed that there was no use in complaining to the DPD because Detroit Po-lice were on Breakthrough's payroll.

### COUNT I – FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM AGAINST ALL DEFENDANTS

230.  Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

231. Plaintiffs have a fundamental property interest in remaining in possession of and using their vehicles that is protected by the Due Process Clause.

232. Defendants deprived Plaintiffs of their constitutional right to due process when they acted in concert and under color of law to take their cars without the pre-deprivation notice required by Michigan law.

233. Because Plaintiffs and others similarly situated have been towed without adequate pre-deprivation notice, the adequacy of a post-deprivation remedy should be irrelevant; however, Plaintiffs do not have an adequate post-deprivation remedy.

234. The Michigan Code does not provide an automatic right to a post-deprivation hearing.  Rather, in order for a vehicle owner to obtain judicial review, the owner must wait to receive a Notice of Abandoned Vehicle, file a petition, pay the required $75.00 civil filing fee, and post a bond equal to $40.00 plus the amount of the accrued towing and storage fees.

235. Defendants deprived Plaintiffs of their constitutional right to due process when they acted in concert and under color of law to illegally take their cars without providing the post-deprivation notice and opportunity to be heard required by Michigan law.

236. Defendants deprived Plaintiffs of their constitutional right to due process when they acted in concert and under color of law to illegally take their cars without providing timely post-deprivation notice and opportunity to be heard.

237. Defendants deprived Plaintiffs of their constitutional right to due process when they acted in concert and under color of law to illegally take their cars without providing the post-deprivation notice and opportunity to be heard required by Michigan law when they required excessive bonds for obtaining judicial review.

238. Defendants deprived Plaintiffs of their constitutional right to due process when they acted in concert and under color of law and allowed Breakthrough to set the towing and storage fees, and thus the bond, the car owner was required to post to obtain judicial review in cases in which Breakthrough was the adverse party to the car owner, thereby depriving them of a neutral arbiter.

239. Further, the remedies that are available are not adequate.

240. Pursuant to MCL § 257.252e(4), the remedies in the Code are the exclusive remedies for the disposition of abandoned vehicles.

241. Thus, Plaintiffs do not have traditional common law remedies, like actions for conversion.

242.   MCL § 257.252f lists the specific and exclusive remedies that the district or municipal court can order. Those remedies do not include a right to be paid for loss of use of the vehicle in the event the owner is successful at the hearing, any damage to the vehicle, or any other damages caused by the improper seizure of the vehicle.

243.   Plaintiffs' procedural due process claims are cognizable under 42 USC Section 1983.

244.   Plaintiffs procedural due process rights were clearly established at the time of the violations.

## COUNT II – FIRST AMENDMENT CLAIM AGAINST ALL DEFENDANTS

245.   Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

246.   Plaintiffs and others similarly situated have a First Amendment right to petition the government for redress and a right to access the courts.

247.   Defendants deprived Plaintiffs of their First Amendment rights to access the courts when they acted in concert and under color of law and willfully refused to provide the notice to state officials necessary for Plaintiffs to obtain judicial review of the legality of the impoundment of their cars and associated costs.

248. Defendants deprived Plaintiffs of their First Amendment rights to access the courts when they acted in concert and under color of law and financially precluded judicial review by setting excessive bonds as a requirement for judicial review.

249. Plaintiffs' First Amendment claims are cognizable under 42 USC Section 1983.

250. Plaintiffs' First Amendment rights were clearly established at the time of the violations.

## COUNT III – FOURTH AMENDMENT CLAIM AGAINST ALL DEFENDANTS

251. Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

252. Defendants deprived Plaintiffs of their Fourth Amendment right to be free from unreasonable seizures when they seized Plaintiffs cars under the authority of Michigan Vehicle Code and the requirements for seizure under the code were not met.

253. A public official's seizure under the authority of the statute of an automobile that does not meet the statute's requirements for seizure is unreasonable per se. *Livingston v. Luken*, 151 Fed. Appx. 470, 475 (6th Cir. 2005).

254. Plaintiffs' Fourth Amendment claims are cognizable under 42 USC Section 1983.

255. Plaintiffs' Fourth Amendment rights were clearly established at the time of the violations.

## COUNT IV – EIGHTH AMENDMENT CLAIM AGAINST ALL DEFENDANTS

256. Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

257. Defendants violated Plaintiffs' Eighth Amendment rights by imposing excessive fines for alleged violations of the Michigan Vehicle Code before Plaintiffs could retrieve their impounded vehicles.

258. Defendants violated Plaintiffs' Eighth Amendment rights by setting excessive bonds for obtaining judicial review of the alleged violations of the Michigan Vehicle Code.

259. Plaintiffs are coerced into paying exorbitant towing, storage and other fees to either retrieve their property.

260. Hamtramck and Detroit gave Breakthrough unfettered discretion to set the amount of the fines charged for violating the Code and/or to set the amount of bond necessary to obtain judicial review.

261. BREAKTHROUGH charges a minimum of $375.00 in cash for towing a vehicle from a local parking lot and transporting it to their storage lot, often in addition to a $20.00 storage fee per day, a $25.00 charge to retrieve proof of insurance from the vehicle, a $25.00 charge to registration from the vehi-

cle, and a $25.00 charge for any additional item to be retrieved from the vehicle.

262. Upon information and belief, BREAKTHROUGH charges only $75.00 to tow a car the same distance to its storage lot when the tow is voluntary.

263. Imposing an impound fine for an alleged violation of the Code that is a *minimum* of five times the amount for a voluntary tow is excessive.

264. This practice, authorized by the state, amounts to an excessive fine prohibited under the 8th Amendment.

265. Plaintiffs' Eighth Amendment claims are cognizable under 42 USC Section 1983.

266. Plaintiffs' Eighth Amendment rights were clearly established at the time of the violations.

## COUNT V – *MONELL* CLAIMS AGAINST DEFENDANTS DETROIT AND HAMTRAMCK

267. Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

268. As described above, there was a systemic failure by Detroit and Hamtramck to train their police officials about the Code's requirements for impounding vehicles, and the Code's requirement that every impounded vehicle be entered into the LEIN system which is the only way a vehicle owner can obtain judicial review of the impound and related fines.

269. In addition, Hamtramck admitted that it has a custom/policy of not entering impounded cars into the LEIN system because it did not deem the cars abandoned (enough).

270. These customs/policies were a driving force behind the constitutional violations complained of herein.

## COUNT VI -- CIVIL CONSPIRACY

271. Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

272. As described above, there was an agreement, express or implied, by Defendants to violate Plaintiffs' constitutional rights by the unlawful actions of taking their property without due process, denying them access to the courts, unreasonably seizing their vehicles and charging the excessive fines.

273. As described above, each Defendant, either directly or through its agents, committed at least one overt act in furtherance of the conspiracy that caused injury to at least one Plaintiff.

274. Although each coconspirator may not have known of all the details of the conspiracy, all the other participants, or even that the plan was unlawful, the conspiratorial plan involved impounding cars and all Defendants shared in this general objective.

WHEREFORE, Plaintiffs and similarly situated prospective members of the class pray that this Honorable Court certify them as a class and grant judgment in favor of Plaintiffs and against Defendants, and award them compensatory damages, both economic and noneconomic, punitive damages, together with interests, costs, and attorney fees in whatever amount a jury determines to be fair and justified.

### COUNT VII – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT CLAIM, (RICO) 18 U.S. CODE SECTION 1962(c), AS TO ALL DEFENDANTS EXCEPT HAMTRAMCK AND DETROIT

275. Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

276. Defendants BREAKTHROUGH, DICKERSON, McDONALDS CORPORATION, VIRGIRILLI MANAGEMENT, WOODWARD CVS, LLC, CVS CAREMARK CORPORATION, and MIDTOWN LIQUOR & DELI, have directly and/or indirectly received income from a pattern of racketeering activity which has an effect on interstate commerce.

277. Pursuant to 18 U.S.C. 1961(3), these Defendants are persons for the purposes of RICO.

278. Pursuant to 18 USC 1961(4), these Defendants constitute an "enterprise" for the purpose of RICO, hereafter the Breakthrough Enterprise.

279. The BREAKTHROUGH Enterprise is an association-in-fact within the

meaning of 18 U.S.C. § 1961(4) consisting of (i) Defendants BREAK-
THROUGH, DICKERSON, McDONALDS CORPORATION, VIRGIRIL-
LI MANAGEMENT, WOODWARD CVS, LLC, CVS CAREMARK
CORPORATION, and MIDTOWN LIQUOR & DELI, the HPD Defendant
John Does and the DPD Defendant John Does, and including their employ-
ees and agents; (ii) the BREAKTHROUGH participants; (iii) and other
named and unnamed co-conspirators as set forth *supra*. The BREAK-
THROUGH Enterprise is an ongoing organization that functions as a con-
tinuing unit.

280. During the course of an ongoing civil conspiracy, these Defendants were as-
sociated with the Breakthrough Enterprise which engaged in activities that
affected interstate commerce and these Defendants either directly or indi-
rectly, participated in the conduct of the enterprise's affairs through a pattern
of racketeering activity as defined below, in violation of 18 U.S.C. 1962(c).

281. The BREAKTHROUGH Enterprise consists of a group of persons associat-
ed together for the common purpose of a bribery scheme to allow Break-
through to illegally impound cars (conversion), threaten the owners with
physical harm or death if they show up before the impound is completed and
try to prevent the unlawful impound (extortion), then charge grossly exces-
sive fines for return of the car, to be paid in cash only, to finance the bribery

scheme in the form kickbacks to other Enterprise associates for each impounded vehicle.

282. The BREAKTHROUGH Enterprise has engaged in racketeering activity including, but not limited to, the following:

a. Verbally threatening multiple tow victims with murder, or assault with a dangerous weapon if they tried to prevent the illegal impoundment of their vehicles;

b. Attempting vehicular assault of a woman who tried to prevent the illegal impoundment of her vehicle;

c. Extortion;

d. Offering to exchange sex for the return of the female victims' vehicles in lieu of paying the exorbitant tow fee;

e. Blackmailing then falsely charging a tow victim with an assault, leading to the malicious prosecution of a tow victim who questioned the legality of a tow;

f. Bribing public officials;

g. Bribing private persons; and

h. Other criminally indictable offenses to be discovered though the process of litigation, all of which carry a potential penalty greater than 1 year in prison.

283. Defendants have conducted and participated in the affairs of the BREAK-THROUGH Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and 1961(5), which includes multiple instances of bribery, misleading, threatening, extorting, trespassing, and defrauding Plaintiffs and potential members of the class as further described above.

284. The BREAKTHROUGH Enterprise engaged in activities that affected interstate commerce, because it involved impounding motor vehicles that regularly travel interstate, and the Enterprise involved some victims whose vehicles were registered outside the state of Michigan or United States, and/or involved victims who resided outside the State of Michigan or United States, who were visiting Michigan.

285. As a result of Defendant's improper and illegal actions in violation of 18 U.S.C. § 1961 *et. seq.*, Plaintiffs were made to pay unreasonable and excessive costs to retrieve their vehicles after they had been towed illegally and improperly, as well as other damages.

WHEREFORE, Plaintiffs and similarly situated prospective members of the class, pray that this Honorable Court certify them as a class and grant judgment in favor of Plaintiffs and against Defendants, BREAKTHROUGH TOWING, LLC and MICHAEL DICKERSON, MAGIC TOWING, LLC, WOODWARD DE-

TROIT CVS, LLC, CVS CAREMARK CORPORATION, VIRGIRILLI MAN-AGEMENT, McDONALD'S CORPORATION, MIDTOWN LIQUOR & DELI, DPD JOHN DOES, and HPD JOHN DOES in whatever amount of compensatory damages Plaintiffs are found to be entitled, together with treble damages, interests, costs, and attorney fees under 18 USC 1964

## **DEMAND FOR JURY TRIAL**

NOW COME Plaintiffs herein, on behalf of themselves and other persons similarly situated, known and unknown, by and through their counsel, and hereby demand a trial by jury as to any and all issues so triable in the captioned matter.

Respectfully Submitted,

*/s/ Hannah R. Fielstra*
HANNAH R. FIELSTRA (P82101)
ERNST CHARARA & LOVELL, PLC
Counsel for Plaintiffs
645 Griswold Ave., Ste. 4100
Detroit, MI 48226
(313) 965-5555
hannah@ecllawfirm.com

Dated: August 30, 2019