# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**OLIVIA ROBERTSON, LENG VANG, TIMOTHY BATES, ASHLEY COLLINS, JUSTIN KANDAH,** and **KAREN ABKE** on behalf of themselves and other persons similarly situated, known and unknown,

      Plaintiffs,

v.

**BREAKTHROUGH TOWING, LLC, MAGIC TOWING, LLC** (formerly Breakthrough Towing, LLC), **MICHAEL DICKERSON** (aka Mike Jones), individually and as owner/resident agent of Breakthrough Towing and Magic Towing, **CVS PHARMACY #8137, CVS CAREMARK CORPORATION, McDONALD'S #20757, McDONALD'S CORPORATION, MIDTOWN LIQUOR & DELI, THE CITY OF DETROIT, THE CITY OF HAMTRAMCK, CITY OF HAMTRMACK POLICE DEPARTMENT JOHN DOES**, and **CITY OF DETROIT POLICE DEPARTMENT JOHN DOES**,

      Defendants.

**CASE NO. 2:19-CV-10266-AC-EAS**

**HON. STEPHANIE DAWKINS DAVIS**

**Magistrate Elizabeth A. Stafford**

**PLAINTIFFS' BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS CVS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (ECF No. 160)**

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

Whether Defendants CVS should be held liable for Constitutional violations to Plaintiffs under the First, Fourth, Eighth, and Fourteenth Amendments and violations pursuant to the RICO Act where:

A.     Defendants CVS acted under color of law by conspiring with de facto state actors, Defendants Breakthrough Towing and Michael Dickerson;

B.     Defendants CVS' employees/agents accepted bribes from de facto state actors, Defendants Breakthrough Towing and Michael Dickerson;

C.     Defendants CVS encouraged Breakthrough Towing and Michael Dickerson to deprive Plaintiffs and others similarly situated of their constitutional rights.

D.     Defendants CVS engaged in and played a role in directing a pattern of racketeering activity, along with other members of the "Breakthrough Enterprise" wherein Defendants' agents/employees benefitted from their participation.

Plaintiffs Answer: Yes.

This Court Should Answer: Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Carmen Auto Sales III, Inc v City of Detroit*, ___F Supp 3d___; 2018 U.S. Dist. LEXIS 42298 (ED Mich, Mar. 15, 2018)

*Goldberg v Kelly*, 397 US 254 (1970)

*Memphis, Tenn Area Local, American Postal Workers Union v. City of Memphis*, 361 F3d 898 (CA 6, 2004)

*Mertik v. Blalock*, 983 F.2d 1353 (CA 1993)

*NIPP Royal Oak, LLC v. City of Royal Oak*, 420 F Supp 2d 791 (ED Mich, 2006)

*Stypmann v San Francisco*, 557 F2d 1338  (CA 9, 1977)

*Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478 (6th Cir. 2009)

*United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464 (CA 6, 2014)

*United States v. Classic*, 313 U.S. 299 (1941)

*United States v. Murphy*, 937 F.2d 1032 (6th Cir. 1991)


MCL 257.252(a)

U.S. Const. amend. XVI

## AVERMENTS IN PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants Breakthrough Towing, LLC, as well as its alter-ego Magic Towing, are towing companies owned and operated by Defendant Michael Dickerson that illegally tow cars in Detroit and Hamtramck. Defendants Breakthrough Towing and Magic Towing regularly tow legally parked vehicles without permission from the vehicle's owner. This rogue towing occurs at various parking lots in Detroit and Hamtramck, including a CVS parking lot owned or operated by Defendant Woodward Detroit CVS, LLC (CVS #8137 in Hamtramck), a franchisee of Defendant CVS Caremark Corporation ("Defendants CVS").  ECF No. 50, PageID.1046.  This illegal, exploitative, and predatory towing is routinely done in violation of Michigan towing statutes.  ECF No. 50, PageID.1047.

Defendants Breakthrough Towing and Michael Dickerson conspired with the other Defendants, including Defendants CVS, and arbitrarily charged excessive fees to car owners as a prerequisite for judicial review of the impoundment and/or associated costs.  The fees were so exorbitant so that Defendant Dickerson could afford to profit while still engaging other conspirators, by offering kickbacks for their cooperation.  ECF No. 50, PageID.1047. Among these conspirators who received significant kickbacks from Breakthrough were employees and/or agents of Defendants CVS.  Defendants Breakthrough and Dickerson acted under color of law at all times relevant.  Thus, Defendants CVS, by conspiring and participating in an

1

elaborate enterprise with Defendants Breakthrough and Dickerson, acted under color of law when it violated the constitutional rights of Plaintiffs and the other potential class members. ECF No. 50, PageID.1050-1052.

Defendant, Woodward Detroit CVS, LLC (CVS Pharmacy #8137), is located in Hamtramck, Michigan.  Woodward Detroit CVS, LLC is independently owned, a franchisee, a subsidiary, and/or alter-ego of CVS Caremark Corporation.  **Through its agents, it conspired with Defendants Breakthrough to violate one or more of Plaintiffs' constitutional rights, including Plaintiff Olivia Robertson and others similarly situated, when its employees and/or agents took bribes from Breakthrough in exchange for allowing and/or reporting cars to be towed even when the cars were legally parked or otherwise not given requisite legal notice before being deprived of their property.**  Woodward Detroit CVS, through its agents, acted under color of law by conspiring with a person acting under color of law to violate the constitutional rights of Plaintiffs and the potential class members. At the time Ms. Robertson parked her vehicle in the CVS parking lot, no signs displayed by CVS or Breakthrough Towing, LLC appeared at each point of entry to the real property, either off of Holbrook Road or Mitchell Street, contrary to Michigan Towing Law requirements pursuant to MCL 257.252(k), further aiding in the conspiracy to deprive Plaintiffs of their right to due process and to their property. ECF No. 50, PageID.1071-1072.  In exchange for their participation in the

conspiracy, Defendants CVS' agents and/or employees received kickbacks or other incentives from Defendants Breakthrough and Dickerson. ECF No. 50, PageID.1052-1053.

**BACKGROUND FACTS FROM PLAINTIFFS'
SECOND AMENDED COMPLAINT**

As was pled in Plaintiffs' Second Amended Complaint (ECF No. 50, PageID.1071-1075), on or about the evening of April 5, 2018 and into April 6, 2018, Plaintiff and class representative Olivia Robertson was patronizing Bumbo's, a business located in Hamtramck, Michigan.  She parked her vehicle across from Bumbo's in a lot owned and controlled by CVS, located on the corner of Holbrook Road and Mitchell Street.  No Breakthrough Towing, or towing signs whatsoever, were visible to Ms. Robertson when she parked her car in the lot in a parking space facing Bumbo's, long after the CVS had closed for the evening.  At the time Ms. Robertson parked her vehicle in the CVS parking lot, no signs displayed by CVS or Breakthrough Towing, LLC appeared at either of each point of entry to the real property, either off of Holbrook Road or Mitchell Street, contrary to Michigan Towing Law requirements pursuant to MCL 257.252(k).

When the Hamtramck Police Department arrived on the scene, they continued to allow the Breakthrough tow truck driver to hook up Ms. Robertson's vehicle and load it on to the tow truck in violation of MCL 257.252d(2). <u>Ms. Robertson was</u>

then advised by a Hamtramck police officer that CVS had a contract with Breakthrough Towing to remove cars from their lot.

When Ms. Robertson called Breakthrough Towing to retrieve her car, she was advised that she would need to pay $375 in order to get her car back. When she arrived to the Breakthrough Towing office the following day to retrieve her car, she was told she would have to pay additional fees because she did not have a hard copy of her registration on her person because it was in her car and she would not be allowed to access it, in addition to an "overnight fee." She was also told she must pay cash, despite a sign in the window advertising credit card options. Overall, Ms. Robertson's Breakthrough Towing experience cost her $420 as a result of a tow that was illegal to begin with.

## STANDARD OF REVIEW

"[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Although the plausibility standard is not

equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. In reviewing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). FRCP 8(a)(2) requires only "a short and plain statement of the claim showing the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007).

### I. The Michigan Motor Vehicle Code.

MCL 257.252(a) governs when a car can be taken into custody, defines when a car is deemed "abandoned" for the purposes of the statute (a necessary precursor for a car to be taken into custody), governs the penalties for abandoning a car, and sets forth the notice that must be provided to the individual whose car was taken into custody. The statute also governs the duties of the police agency that has jurisdiction over the location of the car taken into custody. Lastly, it governs the procedures for challenging the legality of the impoundment and the reasonableness of expenses charged for towing and storage, as well as bond requirements. Subsection (2) defines

"abandoned as a "vehicle that has remained on private property without the consent of the owner."

If a car is abandoned under subsection (2)(a) because it has remained on private property without the lot owner's consent, the car can be taken into custody in *two* separate ways: If the lot owner notifies the police, the police can cause a towing company to take the car into custody as an abandoned vehicle under subsection (4).  Alternatively, the lot owner can have the vehicle taken into custody as an abandoned vehicle by notifying an authorized towing agency under subsection (10).  These two scenarios are dealt with separately under the statute.  However, under either scenario, taking the car into custody is only authorized if the vehicle is abandoned, and the duties of the police agency regarding providing notice are identical—it must enter a notice of abandoned vehicle into the LEIN system.  It is only after this initial notice is received that the Secretary of State (SOS) can inform the car owner that his car has been deemed abandoned, notify him of his post deprivation rights, and provide the abandoned notice form which is a *sine qua non* for initiating judicial review.

Subsection (4) provides: **If the vehicle is an abandoned vehicle**, the police agency or the agency's designee may have the towing agency take the vehicle into custody. Subsection (5) provides in part:

> A police agency that has received a vehicle taken into custody as abandoned **shall do all of the following**: (b) **Within 24 hours after**

6

> **the vehicle is taken into custody, enter the vehicle as abandoned into the law enforcement information network, and notify the secretary of state through the law enforcement information network that the vehicle has been taken into custody as abandoned.**

Subsection (5) then lists the information that must be contained in the LEIN notice, which includes, among other things: the VIN, when the car was taken into custody and by whom, the business address of the current custodian, and the court having jurisdiction over the custody. Clearly, under subsection (4), the police agency can only have a vehicle taken into custody if it is deemed "abandoned." And, clearly under subsection (5), if the vehicle is taken into custody by a towing company, the police agency must enter the vehicle onto the LEIN as abandoned.

Subsection 11 provides:

> Before removing the vehicle from private property, the towing agency shall provide notice by telephone, or otherwise, to a police agency having jurisdiction over the vehicle that the vehicle is being removed. **Within 24 hours after receipt of the notice from the towing agency, the police agency shall** determine if the vehicle has been reported stolen and **enter the vehicle into the law enforcement information network as an abandoned vehicle.**

Subsection (12) then provides that within this same 24-hour period, the police agency shall provide to the Secretary of State the exact same information as required by subsection(5)(b). This statutory scheme likewise does not afford police agencies discretion as to which towed vehicles can be entered into LEIN.

Subsections (5)(c) and (13), respectively, then set forth the duties of the SOS after receiving the LEIN Notice of Abandoned Vehicle.  The only difference between the SOS's duties is that under (5)(c), the car owner is informed of his rights to contest the police agency's actions, (*see* (5)(c)(i)(H)), whereas under Subsection (13), the car owner is informed of his rights to contest the custodian's actions (see (13)(a)(viii)).   This is because subsection (5) governs cars taken into custody when initiated by the police, whereas subsection (13) governs cars taken into custody when initiated by the lot owner. Under both these subsections, a vehicle owner never receives notice of his post deprivation rights from SOS unless the vehicle has been entered into the LEIN as abandoned.

Further, the car owner has no other civil remedies; he can only challenge the taking of his property under the Motor Vehicle Code.  MCL 257.252e(4) provides: "The remedies under sections 252 through 254 are the exclusive remedies for the disposition of abandoned vehicles."[1]

Subsections (6) and (14), respectively, govern the only procedures by which the car owner can challenge the legality of the impoundment of his car and fees (towing and storage) associated with the impoundment.   These subsections are materially indistinguishable except that under subsection (14), a vehicle owner

---

[1] In Plaintiffs' Second Amended Complaint, they have removed their state law claims in light of the exclusive remedy provision of the Michigan Vehicle Code.

cannot challenge the towing and storage costs if they have been established by contract between the municipality having jurisdiction and the towing company. Otherwise, they share the following:

> The owner may contest the fact that the vehicle is considered abandoned or the reasonableness of the towing fees and daily storage fees by requesting a hearing and **posting a bond equal to $40.00 plus the amount of the accrued towing and storage fees**. A request for a hearing shall be made by filing a petition with the court specified in the notice [received from the secretary of state] within 20 days **after the date of the notice**. ..., if the owner requests a hearing, the matter shall be resolved after a hearing conducted under sections 252e and 252f. **An owner who requests a hearing may obtain release of the vehicle by posting a towing and storage bond in an amount equal to the $40.00 plus the accrued towing and storage fees with the court**. The owner of a vehicle who requests a hearing may obtain release of the vehicle by paying a fee of $40.00 to the court and the accrued towing and storage fees instead of posting the towing and storage bond.

As alleged in their Second Amended Complaint, consistent with the Michigan Motor Vehicle Code, the process and notice due to Plaintiffs when their vehicles are towed is only afforded through strict adherence to the statute. However, as alleged, failure to provide the notice and post-deprivation remedies required in this case is systemic, and has resulted in violations of Plaintiffs' Constitutional rights.

Defendants CVS conspired with Defendant Breakthrough, a de facto state actor acting under color of state law, to interfere with Plaintiffs' Constitutional rights by taking bribes or kickbacks in exchange for reporting paying customers' vehicles to be towed even when those cars were legally parked. By doing so, Defendant CVS

seized Plaintiffs' vehicles and deprived them of their lawful property without any sort of due process. Plaintiffs should have been afforded, at the very least, an opportunity to contest their tows and impound fees, as explicitly contemplated by Michigan state law. However, due to Defendants' predatory and conspiratorial actions, no such process was afforded to Plaintiffs.

### B.    The Significance of a Notice of Abandoned Vehicle Form

A Notice of Abandoned Vehicle form is the instrument that gives the car owners notice of their post-deprivation rights and the form that is a *sine qua non* for obtaining judicial review of the impoundment and associated impound fees. Olivia Robertson and other similarly situated Plaintiffs who were towed from Defendants CVS, never received a Notice of Abandoned Vehicle. Without that form, Plaintiffs are not able to contest their tows, as they should have been permitted to do pursuant to MCL 257.252(e).

The Notice of Abandoned Vehicle form is the only document that informs Plaintiffs and others similarly situated of their rights after their vehicles have been towed. As described in further detail above, Subsections (5)(c) and (13) of MCL 257.252(a) set forth the duties of the Secretary of State after receiving the Notice of Abandoned Vehicle. Among those duties are to:

> …send to the last titled owner and secured party […] notice that the vehicle is considered abandoned. […] Each notice form shall contain […] The procedure to contest the fact that the vehicle is considered abandoned or the reasonableness of the towing fees and

daily storage fees. A form petition that the owner may file in person
or by mail with the specified court that requests a hearing on the
police agency's action.

The Notice of Abandoned Vehicle explains the sole procedure for one to contest an

improper tow.  Without that form, vehicle owners are not informed of their rights.

Even Constitutionally adequate procedures are useless if those whose property is

being taken are unaware of their existence. *Anderson v Rizzo*, 469 F Supp 683, 685

(ED Pa, 1979).

However, even if the vehicle owner is somehow independently aware of his

post-deprivation rights, he can never challenge the claim that his vehicle was

considered abandoned, or the amount of the towing and storage fees, until he

receives a notice form from the SOS that his vehicle has been considered abandoned.

It is the Notice of Abandoned Vehicle that triggers the right to judicial review.

State Court Administrator's Office (SCAO) approved form "dc90" must be

completed by anyone who wishes to contest his or her tow or seek redress in a court,

as provided by MCL 257.252(e).  SCAO Form dc90 **must be filed within 20 days**

**of the receipt of a Notice of Abandoned Vehicle form.**  Failure to file that form

within the allotted 20-day period bars one from getting their day in court.  The Notice

of Abandoned Vehicle Form is the only mechanism that triggers the start of that

short 20-day procedural requirement.  Upon the filing of a petition by the person

who was deprived of their car, the local district court has 30 days to grant a hearing.

Further, a date for receipt of one's Notice of Abandoned Vehicle Form is necessary to include on the document (See #4 on SCAO Form dc90).



Thus, the date of receipt of the Notice of Abandoned Vehicle form is necessary to ensure that SCAO Form dc90 is filed timely, completed properly, including adding the date the Notice of Abandoned Vehicle Form was received, and one receives a hearing within the appropriate time frame. Failure to receive a Notice of Abandoned Vehicle form prohibits any of the above events from being set into motion, thus violating Plaintiffs' Constitutional rights to any post-deprivation remedies, being unlawfully deprived of their property, or being forced to pay excessive bond to retrieve their vehicles. The Plaintiffs' inability to contest the validity of their tow was therefore not just because a court clerk chose not to accept the SCAO form, but because it is procedurally impossible to do so without a Notice of Abandoned Vehicle form.

## II.   DEFENDANTS CVS CONSPIRED WITH BREAKTHROUGH AND DICKERSON AND ACTED UNDER COLOR OF LAW FOR THE PURPOSES OF § 1983

Plaintiffs have pled facts sufficient to establish that Defendants CVS, through their agents, acted under color of law by conspiring with Breakthrough and

Dickerson, de facto state actors who were also acting under color of law, to violate

the constitutional rights of Plaintiffs.

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. **Each conspirator need not have known all of the details of the illegal plan or all of the participants involved**. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991) (emphasis added).

Defendants, including Defendants CVS:

> 1) Conspired to deprive Plaintiffs of their constitutional right to **due process** when they acted in concert and under color of law to take their cars without the pre-deprivation notice required by Michigan law;

> 2) Conspired to deprive Plaintiffs of their **First Amendment rights to access the courts** when they acted in concert and under color of law and willfully refused to provide the notice to state officials necessary for Plaintiffs to obtain judicial review of the legality of the impoundment of their cars and associated costs;

> 3) Conspired to deprive Plaintiffs of their **Fourth Amendment right to be free from unreasonable seizures** when they conspired and seized Plaintiffs cars under the authority of Michigan Vehicle Code and the requirements for seizure under the code were not met, and;

> 4) Conspired to impose excessive fines for alleged violations of the Michigan Vehicle Code before Plaintiffs could retrieve their impounded vehicles.

Defendants CVS' agents and/or employees received compensation for

reporting customers' vehicles to Breakthrough Towing and Michael Dickerson or

allowing them to tow from its lot without proper pre-depravation notice. Defendants CVS chose not have legally requisite signage clearly spelled out by state law. Further, despite complaints, Defendants CVS continued to conspire with Breakthrough Towing and Michael Dickerson, acting under color of law, to deprive Plaintiffs and others similarly situated of their Constitutional rights for financial gain. Even if Defendants CVS were not aware that Plaintiffs' Constitutional rights were violated, or that Defendants Breakthrough Towing and Michael Dickerson were conspiring with state actors, they can still have acted under the color of law for acting in furtherance of the conspiracy by notifying Breakthrough to tow parked vehicles, allowing Defendants to tow from the CVS parking lot in violation of due process rights, and accepting bribes or kickbacks for doing so.

There are three primary, but not exclusive, tests used to determine whether the private actor is liable under § 1983: (1) the public function test, *West v. Atkins*, 487 U.S. 42, 49-50 (1988); (2) the state compulsion test, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 170 (1970); and (3) the symbiotic relationship or nexus test, *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721-265 (1961).

However, as stated in *Memphis, Tenn Area Local, American Postal Workers Union v. City of Memphis*, 361 F3d 898, 905 (CA 6, 2004):

> Application of these tests to the conduct of a private entity, however, is relevant only in cases in which there are no allegations of cooperation or concerted action between state and private actors. *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000) ("If a

private party has conspired with state officials to violate
constitutional rights, then that party qualifies as a state actor and
may be held liable pursuant to § 1983 ."); *Moore v. City of Paducah*,
890 F.2d 831, 834 (6th Cir. 1989) (holding that individuals who
conspire with state actor to deprive individuals of their federally-
protected rights may be found to have acted under color of state law
for purposes of § 1983 liability). Private persons may be held liable
under § 1983 if they willfully participate in joint action with state
agents. *Dennis v. Sparks*, 449 U.S. 24, 27-28, 66 L. Ed. 2d 185, 101
S. Ct. 183 (1980); *United States v. Price*, 383 U.S. 787, 16 L. Ed. 2d
267, 86 S. Ct. 1152 (1966).

In this case, Plaintiffs can establish that these defendants acted under color of

law in numerous ways by conspiring with de facto state actors and other persons and

entities acting under color of law.

### A.  Defendants CVS Acted under Color of Law When it Conspired with Another Defendant Acting Under Color of Law Who Bribed Public Officials.

First, Plaintiffs pled that Defendants Breakthrough Towing and Michael

Dickerson acted in concert with Hamtramck police officers.  As the Court explained

in *Carmen Auto Sales III, Inc v City of Detroit*, ___F Supp 3d___; 2018 U.S. Dist.

LEXIS 42298, at *21 (ED Mich, Mar. 15, 2018):

It is true that bribery on the part of private officials may lead to the
private parties' § 1983 liability. See *Dennis v. Sparks*, 449 U.S. 24, 27-
29, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980) (citing *Adickes v. S. H.
Kress & Co.*, 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142
(1970). And one circuit attaches § 1983 liability to private parties
willfully engaged in a "corrupt conspiracy" to bribe public officials.
See *DuBose v. Kelly*, 187 F.3d 999, 1003 (8th Cir. 1999). But the
corrupt conspiracy must be established with admissible evidence and
related to the alleged constitutional violation.

In this case, Plaintiffs alleged that Breakthrough bribed Defendants by directly paying them money to allow them to tow cars from private lots, including the subject CVS parking lot located in Hamtramck. The police allowed Breakthrough to tow the cars even though the owners of the lots did not call to request the tow, and even though there was not proper notice of a potential tow as required by Michigan law. On some occasions, the police allowed Breakthrough to tow cars even though the car owners were on the scene before the car was removed, directly in violation of Michigan law, as was the case with Plaintiff Olivia Robertson. In negotiating and participating in a kickback scheme with other defendants acting under color of law, Breakthrough Towing and Michael Dickerson, where Defendants CVS' agents and/or employees received kickbacks, Defendants CVS acted under color of law.

### B.  Defendants Acted Under Color of Law When They Conspired with Breakthrough Towing and Dickerson to Misuse the Power Granted to Them under the Authority of State Law.

Plaintiffs also alleged that Breakthrough and Dickerson abused the power and authority granted to them by state law.  By conspiring with Breakthrough Towing and Dickerson for its own financial gain and encouraging Breakthrough Towing and Dickerson to continue to misuse that power, Defendants CVS acted under color of law.  "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "'under color of' state law." *United States v. Classic*, 313 U.S. 299, 327 (1941).

16

In this case, state law grants licensed tow companies the right to tow vehicles from private lots when the lot owner requests a tow, but only under certain conditions, as outlined above. Without this grant of the authority of the state, Breakthrough could not tow cars. Defendants CVS, through their agents and/or employees, allowed and in fact, frequently requested Breakthrough Towing tow its customers who were legally parked in its parking lot for financial gain. All while not maintaining legally requisite signage. This conspiracy amounts to action under color of law.

Plaintiffs alleged that the private actor Defendants completely conspired to misuse and abuse their power in myriad ways: They towed cars from private lots when lot owners and/or agents requested they tow legally parked cars of customers; They towed cars from private lots without the request of the lot owner; They used their own spotters to tell them when cars were parked in private lots; They towed cars when there was not the legally requisite posted notice; They towed cars when the owner was present before the car was removed; and they charged excessive towing and storage fees, among other things. Further, they abused their authority in these ways knowing the car owner would be unable to challenge either the tow itself or the excessive charges because they knew the car owners would not receive the Notice of Abandoned Vehicle or notice of their right to seek judicial review of the legality of the tow and/or charges.

### C.  Defendants Acted under Color of Law under the Symbiotic Relationship Test.

Under the symbiotic relationship or nexus test, a plaintiff must demonstrate that there was a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself. *See Jackson*, 419 U.S. at 357-58; *Burton* 365 U.S. at 724-25. This occurs when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar*, 457 U.S. at 937.

Courts have held that towing companies did act under color of law when the private towing company acting at the behest of a police officer and pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws, *Stypmann*, 557 F.2d at 1338 *Goichman* 682 F2d at 1322; and when a private towing company acted upon the instruction of a police officer to impound a vehicle during an ongoing criminal investigation, *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007).  *See also Soffer v. City of Costa Mesa*, 798 F.2d 361, 364 (9th Cir. 1986) (recognizing that in certain situations, a private towing company could qualify as a state actor under 42 U.S.C. § 1983).[1]

---

[1] In the context of towing companies, courts have held that a tow company does not act under color of law when the decision to tow was the city's alone and there was no evidence that the tow company and city shared in the alleged unconstitutional goal, *Bowersock v. City of Lima*, ___F Supp 2d___; 2008 U.S. Dist. LEXIS 31480, at *8-9 (ND Ohio 2008), where the tow

In this case, Breakthrough was a regulated entity.  See MCL 257.252(a), *et seq*.  Moreover, using their spotters or employees/agents of Defendants CVS, these private defendants made numerous decisions to tow cars from private lots, including towing patrons of the subject CVS parking lot, and without the proper signage giving mandated notice of towing. These actions were undertaken in clear violation of Michigan law.  Hamtramck police officers then aided the private defendants' actions of setting extortionate and excessive fees by willfully refusing to cause notice of the right to challenge the tow and the fees, effectively depriving Plaintiffs and other similar situated individuals of their due process rights.  Thus, Breakthrough Towing and Michael Dickerson "acted together with or [...] obtained significant aid from state officials" as discussed in *Lugar*. By conspiring with a de facto state actor, Defendants CVS also acted under color of law.

### D.   Defendants Acted under Color of Law under the State Compulsion Test.

Plaintiffs have also pled sufficient facts to satisfy the state-compulsion test. "The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state." *Memphis*, 361 F3d at 905. In this

---

company was merely performing its public contract with the city, *Banks v. Fedierspiel*, ___F Supp 2d___; 2011 U.S. Dist. LEXIS 36311, at *13-14 (ED Ky 2011), or when the tow was made at the request of the owner of a private lot, *Beyer v. Vill. of Ashwaubenon*, 444 F. App'x 99, 101 (7th Cir. 2011).

case, Hamtramck significantly encouraged Breakthrough Towing and Michael Dickerson, covertly if not overtly, to tow vehicles illegally and charge excessive fees, part of which was given to Defendant CVS' agents and/or employees, by refusing to provide the notice necessary for the car owners to challenge the tows, and by preventing the car owners from retrieving their cars before their cars were towed.  By conspiring with Defendants and de facto state actors, Breakthrough and Dickerson, Defendants CVS also acted under color of law.

## III.   PLAINTIFFS AND THE PROSPECTIVE CLASS MEMBERS PLED VIABLE PROCEDURAL DUE PROCESS CLAIMS

Plaintiffs have brought a procedural due process claim based on a taking of property protected by the Due Process Clause – their vehicles – without any pre-deprivation notice or hearing, and because they were denied any post deprivation remedy. As described in further detail above, when a vehicle owner is deprived judicial review because they do not properly receive a Notice of Abandoned Vehicle, the car owner has no other civil remedies outside of challenging the taking of his property under the Motor Vehicle Code, which provides limited remedies.

MCL 257.252(a) allows a vehicle owner to contest towing fees when they "post[] a bond equal to $40.00 plus the amount of the accrued towing and storage fees."  Absent a contract setting that amount, the towing company, who is generally the adverse party to the car owner's challenge of the impoundment and/or the amount of the towing and storage fees, has the right to set the amount of the towing fees

which in turn sets the amount of bond.[2] Further, there is no statutory limit on the towing company's discretion when setting the amount.  Thus, the towing company gets to set the amount of the bond an adverse party must post before it may challenge the towing company's actions.

Further, Michigan law allows a delay of at least 38 days before a car owner can obtain judicial review.  As previously demonstrated, the police have 24 hours to notify the Secretary of State, the SOS has seven days to send a notice of abandoned vehicle to the owner of the vehicle, which includes a form petition to challenge the legality of the tow and the fees, Section 252a(5)(c) and (13).  Upon the filing of a petition by the person who was deprived of his car, the court has 30 days to grant a hearing.  Section 252f(1)(a).  Thus, under the statue, at a bare minimum, a car owner can be deprived of the use of his car for 38 days, assuming he receives the notice the day after it is mailed, files the petition the same day, and actually gets a hearing within 30 days.

Under the exclusive remedy provided by subsections 252 through 254, a person who has their car impounded can never be made whole. MCL 257.252(f) contains expressly limited remedies. The aggrieved person is not entitled to the lost

---

[2]In *Noll v. Ritzer*, 317 Mich. App. 506, 515 (2016), the court ruled that even if a prehearing release was not being sought, posting of a bond in the amount of $40 plus accrued towing and storage fees must accompany a request for a hearing under MCL 257.252(a), unless the fees have already been paid (or bond posted).

use of his car, such as car rental fees and transportation from the location where his car was originally towed. MCL 257.252(f) allows only that, if successful at the hearing on the challenge to the impoundment, the car owner is entitled only to the return of his vehicle and the reimbursement of any impound charges.  He/she cannot be compensated for his time contesting the charges.  He is not even necessarily entitled to return of the $75 filing fee which the car owner must pay to petition for the return of his car, much less the annoyance, humiliation, frustration and mental anguish associated with having one's car unlawfully towed and the stress involved with the loss of one's primary mode of transportation.

MCL 257.252(k) provides that even though a car could be deemed abandoned because left on a private lot without the consent of the lot owner, **there is no authority to tow the car unless proper notice is provided beforehand**. Proper notice includes signage "prominently displayed at each point of entry for vehicular access to the real property" that is "is permanently installed with the bottom of the notice located not less than 4 feet from the ground and is continuously maintained on the property for not less than 24 hours before a vehicle is towed or removed." Plaintiff Robertson alleges that Defendants CVS failed to provide proper notice.

### A.  Plaintiff Has Sufficiently Alleged a Fourteenth Amendment Procedural Due Process Claim.

As the court explained in *Mertik v. Blalock*, 983 F.2d 1353, 1365 (CA 1993):

> In this Circuit, then, a § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss.

Id. (emphasis in original; citations omitted).

To establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest [or adequate post-deprivation rights]." *Albrecht v. Treon*, 617 F.3d 890, 894 (CA 6 2010) (internal quotation marks omitted). Property rights are "principally created by state law," but "whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law." Id. (internal quotation marks omitted).

## 1. The property rights at issue were compelling and subject to protection under the Due Process Clause.

A person's property interest in the uninterrupted use of their vehicle is protected by the due process clause.

> Loss of the use and enjoyment of a car deprives the owner of a property interest that may be taken from him only in accordance with the Due Process Clause. Due process strictures must be met though the deprivation be temporary.
>
> *            *            *

> The private interest in the uninterrupted use of an automobile is substantial. A person's ability to make a living and his access to both the necessities and amenities of life may depend upon the availability of an automobile when needed.

*Stypmann v San Francisco*, 557 F2d 1338, 1342-43 (CA 9, 1977). *See also Segura v. Block*, 1993 U.S. App. LEXIS 28828, *4 (CA 9 1993):

> Segura clearly had a property interest in the uninterrupted use of his truck. See, e.g., Scofield v. City of Hillsborough, 862 F.2d 759, 762 (9th Cir. 1988); Draper v. Coombs, 792 F.2d 915, 922 (9th Cir. 1986).[2]

**2.  Plaintiff and the similarly situated class members have adequately pled a due process violation for inadequate post-deprivation remedies because they did not receive the notice of their post deprivation remedies and the notice form necessary to challenge the impoundment and associated fees.**

In this case, Plaintiffs and well into the hundreds of similarly-situated, prospective class members, never received the Notice of Abandoned Vehicle form, informing of their right to contest the lawfulness of the impoundment and/or the reasonableness of the towing and storage fees as a result of the conspiracy among Defendants, including Defendants CVS.

In *Arnold v. International Business Machines Corp.,* 637 F.2d 1350, 1355 (CA 9 1981), the court stated:

> [P]ersonal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection

---

[2] *And see Bell v Burson*, 402 US 535, 539 (1971), in which the Supreme Court held that even driver's licenses are property protected by the Due Process Clause because "their continued possession may become essential in the pursuit of a livelihood."

can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

Procedural due process ensures that "parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (quoting *Baldwin v. Hale*, 68 U.S. 223 (1863). In a similar vein, another federal district court stated:

> Even constitutionally adequate procedures are useless if those whose property is being taken are unaware of their existence. And *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 13-15, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978) certainly teaches that, at least in some contexts, due process requires that interested persons be informed of the availability of procedures through which they may challenge actions that deprive them of their property.

*Anderson v Rizzo*, 469 F Supp 683, 685 (ED Pa, 1979).

In this case, not only were Plaintiff and over one-hundred (100) prospective class members not provided notice of their right to a pre-deprivation notice, but because they were never provided the notice that their vehicle had been deemed abandoned, they were unable to challenge the legality of towing or reasonableness of fees even if they were independently aware of their right to challenge the impoundment and/or the fees.

Plaintiff and dozens upon dozens of prospective class members were denied access to the courts to challenge the impoundment of their vehicle because they were never provided the notices required by statute. This was caused by a willful failure

to enter the towed vehicles onto LEIN as abandoned by Defendant Hamtramck. Thus, Defendant set in motion a series of acts by others which the actor knows or reasonably should know would cause a constitutional injury.

**3.  Defendants denied Plaintiff and prospective class members the right to an impartial arbiter by allowing the towing company unbridled discretion to set the amount of bond, which was required to be posted before a hearing could be obtained, even though the towing company was adverse to the car owners, like Plaintiff, challenging the impoundment and/or the towing and storage fees.**

At a very minimum, to comport with due process, the state must provide a neutral arbiter.  As the Supreme Court stated, "And of course, an impartial decision maker is essential."  *Goldberg v Kelly*, 397 US 254, 271 (1970).  Michigan law requires that the petitioner challenging the impoundment of his vehicle most post a bond in the amount of the accrued towing and storage fees plus $40. MCL 257.252a(14); *Noll*, 317 Mich App at 515.  However, Michigan law allows a municipality the discretion to allow the towing company to determine the amount of the accrued towing and storage fees, and thus the bond. Further, there are no restraints or limitations placed on the amount of the towing and storage fees the towing company could set.

Thus, in this case, Defendants Breakthrough and Dickerson were given unbridled discretion to set the amount of the towing and storage fees, and thus the bond, in whatever amount they chose, in the very cases where parties sought to challenge their actions.  They conspired with Defendants CVS in setting these bonds,

26

as Defendants CVS's employees and/or agents received kickbacks per vehicle towed. **In order to compensate Defendants and still profit, Breakthrough and Dickerson charged exorbitant towing fees.** This resulted in arbitrary and capricious towing and storage fees being set and thus an arbitrary and capricious bond amount. The fees were nearly always set at five to six times the normal rate for a tow. For example, one of the prospective class members' cars was unlawfully towed. Later that evening, she called Breakthrough and determined that her car was towed to a lot 2.8 miles away. She was told that the towing and storage fees were $440. A short time later, she called Breakthrough and stated that he car broke down and she needed a tow of three miles and asked how much it would cost. She was quoted a price of $75. Notably, Plaintiffs and nearly all of the prospective class members were told that fee would be upwards of $400 even when they called Breakthrough the same day or the following day, and even though their cars were towed only two to three miles. Plaintiff Robertson paid the extortionate ransom to get her car back.

**4. Plaintiff and the prospective class members were denied the prompt, post deprivation hearing required following the prehearing deprivation of their vehicles.**

As stated in *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 485 (CA 6, 2014):

> A fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a

meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965) (internal quotation marks and citations omitted). We apply the well-known balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), to determine if due process was afforded, and we consider: "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved, and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

In balancing the *Matthews* factors in the car towing or car detention context, courts have universally recognized that the private interest in the uninterrupted use of an automobile is compelling, as is the state's interest in the initial tow, and shifting the cost of a lawful tow onto the owner. *See Davis v. Dahmm,* 763 F Supp 1010, 1012-13 (WD Ark, 1991) and the survey of cases therein. However, once the initial towing is accomplished, the government's justifications for delaying a hearing are not compelling. *Wiren v. Eide,* 542 F.2d 757, 761 n.6 (CA 9 1976).

As to what length of delay comports with due process after a vehicle has been detained or towed, at least one court has held that prepayment of towing and storage fees may be constitutionally required only if the statutory scheme allows for a post-seizure hearing within forty-eight (48) hours and for immediate release of the vehicle without such payment in the event it is determined that there was an insufficient factual or legal basis for impounding the vehicle. *See Goichman v. Rheuban Motors, Inc*., 682 F.2d 1320 (CA 9 1982) (noting a five day delay was too long). Another court has held that requiring prepayment before release was constitutionally

permissible only because a post-seizure hearing was available virtually on demand during business hours at which the fees were immediately reimbursed if the owner prevailed. *See Goichman v. Aspen*, 859 F.2d 1466 (CA 10 1988).   Yet another concluded that notice of the right to contest the car's detention must be provided within 24 hours, and a right to a hearing must be provided within 72 hours of receiving a request.  *Lee v Thornton*, 538 F2d 27, 33 (CA 2, 1976).

In this case, Plaintiff and many of the prospective class members, particularly those whose vehicles were towed from the City of Hamtramck, have still not received notice, thus they were denied a prompt hearing on the impoundment of their cars in violation of their right to procedural due process.

### 5.   Plaintiffs adequately pled a procedural due process claim because Defendant's agents deprived Plaintiffs of their vehicles without following the notice procedures required by state law.

While a pre-deprivation hearing is generally not required before towing a vehicle, Plaintiff Robertson, who was towed from the Defendants CVS lot, was at least entitled to the notice guaranteed by Michigan law.  In *NIPP Royal Oak, LLC v. City of Royal Oak*, 420 F Supp 2d 791, 797 (ED Mich, 2006), the court found that the plaintiff sufficiently stated a due process claim when he alleged that the city deprived him of the dance license that was attached to his liquor license when it failed to follow the procedures required by state and local law before doing so:

> Michigan law and the City of Royal Oak Liquor Control Ordinance require that certain procedures must be followed before a liquor license

29

may be suspended or revoked. M.C.L. §§ 436.1501(2), 1903; City of Royal Oak Ord. No. 2001-06 § 430-8. Plaintiff contends it was denied due process because Defendant failed to follow the specified procedures. (Compl. PP22-32, 52; Resp. at 5-6, 8, 11.) These facts are sufficient to state a claim that Plaintiff's due process rights were violated.

Similarly, in this case, Plaintiffs contend that Michigan law requires that certain procedures must be followed before her car was towed from private property and that she was denied due process because Defendant's agents failed to follow the specified procedures.  Michigan law clearly sets forth the procedure required prior to towing an individual's car from private property – there must be proper signage (notice) of the potential for towing, MCL 257.252l, and the car cannot be towed if the owner arrives prior to the car being removed, MCL 257.252(d)(2).

In this case, Plaintiffs including Robertson allege that at times, there were no signs displayed at any point of entry to the property or within view of the place where their cars were parked.  The allegations clearly state a procedural due process claim for a deprivation of property without adequate pre-deprivation notice and without following the required state law procedures for depriving one of the use of their car.

## IV.   PLAINTIFFS AND PROSPECTIVE CLASS MEMBERS PLED VIABLE FOURTH AMENDMENT CLAIMS

Defendants deprived Plaintiffs of their Fourth Amendment right to be free from unreasonable seizures when they unreasonably seized Plaintiffs cars under the authority of Michigan Vehicle Code and the requirements for seizure under the code

were not met.  Plaintiffs and prospective class members parked their vehicles in the lot owned by Defendants CVS, which lacked proper notice warning them their vehicles would be towed, as is required by statute.  When they returned to their vehicles, they were gone or in the process of being illegally towed.

A public official's seizure under the authority of the statute of an automobile that does not meet the statute's requirements for seizure is unreasonable per se. *Livingston v. Luken*, 151 Fed. Appx. 470, 475 (6th Cir. 2005).  Because Defendants CVS conspired with Breakthrough and Dickerson, de facto state actors, and played an active role in the seizing of its customers' vehicles, they are liable for Fourth Amendment Violations, as the vehicles were towed without meeting requirements for a seizure.

## V.   PLAINTIFFS AND PROSPECTIVE CLASS MEMBERS PLED VIABLE FIRST AMENDMENT CLAIMS

Plaintiffs and others similarly situated have a First Amendment right to petition the government for redress and a right to access the courts. Defendants conspired to deprive Plaintiffs of their First Amendment rights to access the courts when they acted in concert and under color of law and willfully refused to provide the notice to state officials necessary for Plaintiffs to obtain judicial review of the legality of the impoundment of their cars and associated costs.  As described in great detail above, because Plaintiffs and others similarly situated did not receive their Notice of Abandoned Vehicle form, they were not able to file any claim in the district

court – the court with jurisdiction to hear their claims. Further, Defendants deprived Plaintiffs of their First Amendment rights to access the courts when they acted in concert and under color of law and financially precluded judicial review by setting excessive bonds as a requirement for judicial review.

## VI.   PLAINTIFFS AND PROSPECTIVE CLASS MEMBERS PLED VIABLE EIGHTH AMENDMENT CLAIMS

Defendants conspired to violate Plaintiffs' Eighth Amendment rights by imposing excessive fines for alleged violations of the Michigan Vehicle Code before Plaintiffs could retrieve their impounded vehicles.  As further described above, the statutory scheme pursuant to MCL 257.252(a)(6) requires Plaintiffs to pay a bond amount equal to the cost of towing their vehicles.  Plaintiffs are coerced into paying exorbitant towing, storage and other fees to either retrieve their property, due to the conspiracy between Defendants Breakthrough, Dickerson, and Defendants CVS. Defendants Breakthrough and Dickerson charge excessive towing fees to be able to pay the agents/employees of Defendants CVS and incentivize them to stay involved with the conspiracy.

## VII.   PLAINTIFFS' RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT CLAIM AGAINST DEFENDANTS CVS IS PROPERLY PLED AND SHOULD NOT BE DISMISSED

Plaintiff's Amended Complaint properly pled a Racketeer Influenced and Corrupt Organizations ("RICO") claim against CVS. To prevail on a RICO claim, a

plaintiff is required to show that Defendants engaged in "(1) conduct, (2) of an enterprise (3) through a pattern … of racketeering activity." *Sedima, S.P.R.I. v. Imrex Co*., 473 U.S. 479, 496 (1985).

### A. Plaintiff Plausibly Pled Distinct Conduct or Participation of Each of the Defendants

The Breakthrough Towing enterprise, which includes Defendant CVS, falls within the 18 U.S.C § 1961(4), as it consists of a group of persons associated together for the common purpose of harassing, threatening, defrauding, converting, trespassing, misleading, and extorting Plaintiffs by towing their property and legally parked vehicles, forcing them to pay unreasonable amounts in cash-only fees, and providing substantial cash kickbacks to other Enterprise associates (including employees/agents of Defendants CVS). The receipt of these kickbacks demonstrate involvement in the criminal enterprise, as required by RICO. For purposes of a 12(b)(6) motion, these allegations bust be taken as true. *Mayer, supra*, at 638.

The Supreme Court held in *Reves v. Ernest & Young*, 507 US 170, 179 (1993), that to be liable under the RICO statute, a defendant must "have some part in directing [the RICO enterprise's] affairs. This is not a case of passive participation. Defendant Woodward Detroit CVS owned and/or completely controlled the property from which Ms. Robertson and countless others were towed and employees received kickbacks for reporting cars located in the CVS lot. They were aware of these illegal tows and facilitated them.

33

Further, **dismissal of RICO claims is not warranted for any potential pleading deficiencies this Court finds**. In *Hall A. Ctr Assocs. Ltd. Partnership v. Dick*, 726 F. Supp 1083, 1091 (E. D. Mich 1989), the court held that all RICO counts should be separated for each element and each defendant. However, the court did not dismiss the Counts and instead gave 30 days for the Plaintiff to amend their Complaint. *Id*. at 1084. <u>If this Court finds that Plaintiffs' pleadings are not sufficient, justice requires that Plaintiffs be provided with an opportunity to amend their lawsuit.</u>

By controlling the land and failing to provide proper pre-depravation notice, along with the receipt of kickbacks more than satisfy the test forth by the Supreme Court in *Reves*. Plaintiffs have pled more than the generalized accusations the Supreme Court held were insufficient in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and thus, their RICO claim should be allowed to proceed.[3]

Further, to state a claim under 42 U.S.C. §1983, a Plaintiff must prove that each defendant through their individual actions has contributed to a violation of the Constitution. However, the "direct personal involvement" requirement can be established in a variety of ways. *Taylor v Michigan Department of Corrections*, 69 F.3d 76 (6th Cir. 1995). For example, this standard can be met when the plaintiffs

---

[3] If this Court finds that Plaintiff's Complaint is deficient, Plaintiffs respectfully request that this Honorable Court allow Plaintiff to submit a Third Amended Complaint within 30 days.

allege that each defendant was involved in the alleged constitutional violations or when they allege substantive allegations from which that involvement can be inferred. *Corsetii v. Hackle*, 2013 U.S. Dist. LEXIS 76908 (E.D. Mich. 2013).

While in many circumstances a Plaintiff's collective references to "Defendants" may be insufficient due to lack of particularity, collective references *are* sufficient where the Plaintiff alleges identical circumstances encountered by each Defendant that results in identical, multiple constitutional violations as to each Defendant. See *Jack-Bey v. Mich. Dep't of Corr.*, 2014 U.S. Dist. LEXIS 41915 (W.D. Mich. 2014).

### B. Plaintiffs Have Plausibly Plead the Existence of a RICO Enterprise

A purpose of the "Breakthrough Towing Enterprise" is abundantly clear from the Complaint: **financial gain**. That purpose was accomplished through "harassing, threatening, defrauding, converting, trespassing, misleading and extorting Plaintiffs by towing their properly and legally parked vehicles, forcing them to pay unreasonable amounts in cash-only fees, and providing kickbacks to other Enterprise associates for each tow reported.". As Plaintiff's Complaint alleges, CVS agents or employees were receiving kickbacks for allowing Breakthrough to tow cars from the parking lot. As cited by Defendant, an enterprise under the RICO statute is "a group of persons associated together for a common purpose of engaging in a course of conduct." *U.S. V. Turkette*, 452 U.S. 576, 583 (1981). Ms. Robertson, and others,

were victims of CVS's role in the RICO conspiracy, as alleged in Plaintiffs' Second Amended Complaint.

Here, Breakthrough Towing was benefitting financially through their illegal towing practices and CVS, as well as the other Defendants, were benefitting financially from the kickbacks they received to facilitate such tows. Thus, the test in as defined by the Supreme Court in *Boyle v. U.S.*, 556 U.S. 938, 946 (2009) is met, which requires three features: purpose, relationships amongst the parties in the enterprise, and a long enough time period to facilitate the purpose of the enterprise's pursuit. As Defendant acknowledges, Plaintiffs alleged that CVS's and Breakthrough's enterprise affected interstate commerce, as it affected out-of-state customers and other customers who drove their vehicles out of state. Taken as true, there is nothing that Defendants can point to which would warrant dismissal of Plaintiffs' RICO claim.

Here, there was a purpose of financial gain, a relationship between the parties, a scheme between Breakthrough Towing employees and/or agents and CVS and enough time for the purpose to be realized - beginning in September 2015, as alleged in Plaintiffs' Second Amended Complaint. ECF No. 50, PageID.1059. Thus, an enterprise, as defined by the Supreme Court, exists.

WHEREFORE, for the foregoing reasons, Defendant's motion should be denied.

Respectfully Submitted,

/s/ Hannah R. Fielstra
HANNAH R. FIELSTRA (P82101)
ERNST CHARARA & LOVELL PLC
Attorneys for Plaintiffs
645 Griswold Street, Ste. 4100
Detroit, Michigan 48226
Phone: (313) 965-5555
Fax: (313) 965-5556
hannah@ecllawfirm.com

Dated: November 3, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2020, I presented the foregoing paper to this Court which will send notification of such filing to the above listed attorneys of record.

/s/ Hannah R. Fielstra