UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OLIVIA ROBERTSON et al.,

   Plaintiffs,      Case No. 19-10266

v.            HON. MARK A. GOLDSMITH


BREAKTHROUGH TOWING, LLC et al.,

    Defendants.
_____/

**OPINION & ORDER**
**(1) GRANTING MOTIONS FOR SUMMARY JUDGMENT FILED BY CITY OF**
**DETROIT (Dkt. 190), CITY OF HAMTRAMCK (Dkt. 193), AND BREAKTHROUGH**
**TOWING, LLC, MAGIC TOWING, LCC AND MICHAEL DICKERSON (Dkt. 203); (2)**
**DISMISSING ALL JOHN DOE DEFENDANTS; AND (3) DENYING MOTION TO**
**CERTIFY CLASS FILED BY PLAINTIFFS (Dkt. 197)**

Plaintiffs filed this class action alleging that a private towing company and its owner engineered a scheme to illegally impound vehicles with the assistance of local businesses and police officers. The scheme forms the basis of Plaintiffs' claims brought against a variety of municipal and private party Defendants under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act Claim, 18 U.S.C. § 1962(c) (RICO). Before the Court are summary judgment motions addressing these claims, as well as a motion for class certification. For the reasons that follow, the Court (i) grants the motions for summary judgment filed by Defendants Detroit (Dkt. 190), Hamtramck (Dkt. 193), and Breakthrough Towing, LLC, Magic Towing, LLC,

and Michael Dickerson (Dkt. 203);[1] (ii) dismisses all John Doe Defendants from the action; and

(iii) denies the motion to certify class filed by Plaintiffs (Dkt. 197).[2]

## I.   BACKGROUND

Plaintiffs argue that Defendants implemented a comprehensive scheme under which

Breakthrough Towing, LLC, a private towing company, illegally towed the vehicles of Plaintiffs

and other similarly situated vehicle owners in Detroit and Hamtramck, with the aid and assistance

of Detroit and Hamtramck police officers.  2d Am. Compl. ¶ 3 (Dkt. 50).  According to Plaintiffs,

Breakthrough's tows violated the Michigan Vehicle Code in two ways: (i) Breakthrough

purportedly impounded vehicles that were not "abandoned" but were, in fact, legally parked, and

(ii) Breakthrough made tows from private lots that had inadequate signage under the Michigan

Vehicle Code.  Pl. SOAF to Detroit's Mot ¶ 1; Pl. SOAF to Hamtramck's Mot. ¶ 8.

Plaintiffs bring claims against three groups of Defendants: (i) municipal Defendants Detroit

and Hamtramck; (ii) private party Defendants Breakthrough Towing, LCC, Breakthrough's owner

Michael Dickerson, and Breakthrough's "alter ego" Magic Towing LLC (collectively,

---

[1] Breakthrough Towing, LLC, Magic Towing, LLC, and Michael Dickerson titled their motion a "motion to dismiss second amended complaint pursuant to Federal Rules of Civil Procedure 56, 12(b)(1) and 12(b)(6)."  Because the motion discusses the summary judgment standard under Federal Rule of Civil Procedure 56, see Breakthrough Mot. at 2, and cites to evidence produced during discovery, see, e.g., id. at 3 (discussing depositions), the Court treats the motion as one for summary judgment.

[2] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  In addition to the pending motions, briefing includes: (i) as to Detroit's motion: Plaintiffs' response (Dkt. 222) and Detroit's reply (Dkt. 229); (ii) as to Hamtramck's motion: Plaintiffs' response (Dkt. 224) and Hamtramck's reply (Dkt. 231); (iii) as to Breakthrough's motion:  Plaintiffs' response (Dkt. 213); and (iii) as to Plaintiff's motion: Detroit's response (Dkt. 207), Hamtramck's response (Dkt. 208), and Plaintiffs' replies (Dkts. 226 and 227).

Breakthrough); and (iii) John Doe Detroit and Hamtramck police officers.  2d Am. Compl. ¶¶ 11–13.[3]

Breakthrough's authority to tow vehicles derives from the Michigan Vehicle Code, which allows for the towing of an "abandoned vehicle"—that is, "[a] vehicle that has remained on private property without the consent of the owner."  Mich. Comp. L. § 257.252a(2)(a).  A towing agency may take custody of an abandoned vehicle through either of two ways: (i) at the direction of a police agency, see § 257.252a(4); or (ii) at the request of the owner of the private property where the abandoned vehicle is located, see § 257.252a(10).  Breakthrough's alleged scheme implicates only the latter scenario; Plaintiffs do not contend that Detroit or Hamtramck ever requested that Breakthrough tow an abandoned vehicle.  Nonetheless, Plaintiffs argue that the municipal Defendants violated Plaintiffs' constitutional rights by failing to enforce various provisions of the Michigan Vehicle Code and by failing to provide the required post-deprivation notice to Plaintiffs.

Plaintiffs bring claims against the municipal Defendants under 42 U.S.C. § 1983 for violations of the Fourth Amendment and Fourteenth Amendment.[4]  2d Am. Compl. ¶¶ 230–244, 251–255.  With respect to Breakthrough and the John Doe officers, Plaintiffs bring (i) claims under § 1983 for violations of the First Amendment, Fourth Amendment, Eighth Amendment, and

---

[3] Plaintiffs also named private parties McDonald's Corp., CVS Caremark Corp., CVS Pharmacy #8137, McDonalds #20757, Midtown Liquor & Deli, and Virgirilli Management Co. as Defendants, but the Court dismissed these Defendants in a prior opinion.  See Robertson v. Breakthrough Towing, LLC, No. 19-10266, 2022 WL 4292314 (E.D. Mich. Sept. 16, 2022).

[4] Plaintiffs' second amended complaint brought claims against all Defendants for violations of the First Amendment, the Fourth Amendment, and the Eighth Amendment, but the Court dismissed these claims as to Detroit and Hamtramck in an earlier motion-to-dismiss ruling.  See Robertson, 2022 WL 4292314.  In the same opinion, the Court also limited Plaintiffs' Fourth Amendment and Fourteenth Amendment claims against the municipal Defendants to certain surviving theories.  Id.

Fourteenth Amendment; (ii) a RICO claim; and (iii) a civil conspiracy claim.  Id. ¶¶ 230–266, 271–285.

After finding that it has subject-matter jurisdiction, the Court proceeds by discussing Plaintiffs' claims against the municipal Defendants, Breakthrough Towing, and the John Doe Defendants in turn.  The Court concludes by dismissing Plaintiffs' motion to certify class as moot.

## II.    ANALYSIS[5]

### A.  Jurisdiction

As an initial matter, this Court has subject-matter jurisdiction over Plaintiffs' federal claims.  Detroit argues that the Court "lacks jurisdiction over the majority of the claims in this case, because the present dispute essentially asserts violations of state law – provisions of the Michigan Motor Vehicle Code regulating private impoundments of vehicles, MCL 257.252a through 257.253 – rather than violations of federal law."  Detroit SOMF ¶ 8.

This argument fails.  Plaintiffs claim that Defendants violated their rights under multiple constitutional provisions.  The Court has original jurisdiction over these claims because they "aris[e] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Even though a plaintiff's claim may be substantively defective, the raising of a federal question by invoking a federal statute or the Constitution is sufficient to confer jurisdiction on a federal court to adjudicate the claim. See Miller v. Bruenger, 949 F.3d 986, 990 (6th Cir. 2020) ("Federal-

---

[5] In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007).  A court will grant a motion for summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1985).

question jurisdiction exists when the cause of action arises under federal law.").  Because Plaintiffs

invoke § 1983 and federal constitutional provisions, this Court has subject-matter jurisdiction.

### B. Procedural Due Process Claim Against Municipal Defendants

To state a procedural due process claim, Plaintiffs must establish (i) that they have a life,

liberty, or property interest protected by the Due Process Clause; (ii) that they were deprived of

that interest; and (iii) that the state did not afford them adequate procedures before or after the

deprivation.  See Chandler v. Vill. of Chagrin Falls, 296 F. App'x 463, 469 (6th Cir. 2008).

Plaintiffs are correct that they have "a significant property interest in their vehicle[s]," of which

they were deprived when their vehicles were towed. See Robertson, 2022 WL 4292314, at *11.

The question, then, is whether Plaintiffs have adequately alleged that they were denied the process

due to them.

Plaintiffs allege three theories for how Detroit and Hamtramck denied them adequate

procedures.  First, Plaintiffs allege that they were denied pre-deprivation notice because Detroit

and Hamtramck failed to enforce regulations requiring proper signage at the scene of tows.  2d

Am. Compl. ¶ 232.  Second, Plaintiffs allege that they were denied post-deprivation notice because

Detroit and Hamtramck systematically failed to enter vehicles into the law enforcement

information network (LEIN).  Id. ¶¶ 20, 21, 234–236.  Third, Plaintiffs allege that Detroit and

Hamtramck failed to enforce a statutory provision that requires a vehicle to be disconnected from

a tow truck if the owner arrives before the vehicle is towed.  Id.  ¶¶ 20, 21.  For the following

reasons, all three theories fail as to the municipal Defendants.[6]

---

[6] In their complaint, Plaintiffs also alleged that Defendants violated Plaintiffs' due process rights
by denying them a prompt hearing and allowing Breakthrough to set the bond amount.  The Court
previously rejected this theory, finding that the delay before a car owner can obtain judicial review
does not violate due process because owners can secure release of their vehicle in advance of the

1.    **Failure to Enforce Signage Requirements**

The Michigan Vehicle Code requires an owner of private real property to post a notice

meeting certain requirements "at each point of entry for vehicular access to the real property"

before authorizing the towing of a vehicle from the property.   Mich. Comp. L. § 257.252k.

Plaintiffs contend that "the police in Detroit allowed Breakthrough to tow vehicles from private

lots even though the lots did not maintain the signage required by the Code.  Therefore, Plaintiffs

and putative class members were denied due process because the [municipal Defendants'] police

officers failed to follow the procedures prescribed by state statute and were not trained properly to

do so because they did not believe that it was their job."  Pl. Resp. to Detroit Mot. at 26.   The

municipal Defendants, on the other hand, argue that "there is no substantive or procedural due

process right to have police prevent deprivations of constitutional rights by third parties."  Detroit

Mot. at 22; Hamtramck Mot. at 36.  The municipal Defendants are correct.

It is well established that there is "no general duty on the part of the state to protect its

citizens from private harms."[7]  Pierce v. Springfield Twp., 562 F. App'x 431, 436 (6th Cir. 2014);

see also Town of Castle Rock v. Gonzales, 545 U.S. 748, 758–768 (2005); DeShaney v.

Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 194–197 (1989).   As the United States

Supreme Court has explained, the purpose of the Due Process Clause was to "protect the people

from the State, not to ensure that the State protected them from each other."  DeShaney, 489 U.S.

at 196.  The clause "forbids the State itself to deprive individuals of life, liberty, or property without

---

hearing by posting bond, and that the bond amount is set by the Code, not the municipal Defendants
or Breakthrough.  See Robertson, 2022 WL 4292314 at *12–*13.

[7] There are two exceptions to this general rule: (i) a "special relationship" exception based on state
custody and (ii) an exception for "state-created dangers."  See Caldwell v. City of Louisville, 200
F. App'x 430, 434 (6th Cir. 2006).  Neither exception applies here, and Plaintiffs do not argue
otherwise.

'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." Id. at 195.

Here, the municipal Defendants had no obligation under the Due Process Clause to enforce the signage requirements of the Michigan Vehicle Code so that Plaintiffs would not be harmed when Defendant Breakthrough Towing, a third party, towed their cars. Plaintiffs' procedural due process claim under this theory fails.

### 2.    Failure to Enter Vehicles Into LEIN

Plaintiffs argue that the failure of the municipal Defendants to enter their vehicles into LEIN constituted a violation of their due process rights. 2d Am. Compl. ¶¶ 20, 21. After a private tow, the towing company is required to provide notice to a police agency having jurisdiction over the vehicle that the vehicle is being removed. Mich. Comp. L. § 257.252a(11). Police officers are then required to enter the vehicle into LEIN within 24 hours, which provides the Michigan Secretary of State with certain information about the vehicle. Id. § 257.252a(11), (12). Within seven days of receiving this notice, the Secretary of State must send the vehicle owner a Notice of Abandoned Vehicle form including information regarding how to redeem the vehicle and contest the tow. Id. § 257.252a(13)(a). Plaintiffs contend that receipt of a Notice of Abandoned Vehicle form is the only notice that vehicle owners receive of their towed vehicles and of their right to contest the tows. They allege that many Plaintiffs did not receive this notice. Pl. Resp. to Detroit Mot. at 22; Pl. Resp. to Hamtramck Mot. at 22.

But a municipality cannot be sued under § 1983 for an injury inflicted solely by its employees—here, the officers who supposedly failed to enter vehicles into LEIN. Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978). A municipality is only liable under § 1983 where "there is a direct causal link between a municipal policy or custom and the alleged

constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989).  Plaintiffs must

show that the municipal policy or custom was the "moving force" behind the constitutional injury.

See, e.g., Searcy v. City of Dayton, 38 F.3d 282, 287 (6th Cir. 1994) ("Monell requires that for a

municipality to be held liable under § 1983, a municipal policy or custom must be the moving

force behind the constitutional injury.").  Here, Plaintiffs contend that the Detroit Police

Department (DPD) and the Hamtramck Police Department (HPD) have policies of not entering

vehicles into LEIN, but they have failed to prove the existence of such policies or that the policies

caused Plaintiffs' alleged deprivation.[8]

The Sixth Circuit has recognized at least four avenues a plaintiff may take to prove the

existence of a municipality's illegal policy or custom: (i) the municipality's legislative enactments

or official agency policies; (ii) actions taken by officials with final decision-making authority; (iii)

a policy of inadequate training or supervision; or (iv) a custom of tolerance or acquiescence of

federal rights violations.  Mosier v. Evans, 90 F.4th 541, 548 (6th Cir. 2024).  Plaintiffs attempt to

show that there was a policy not to enter vehicles in LEIN and a failure to train employees

regarding that process.  As explained below, both arguments fail.

First, Plaintiffs attempt to show the existence of DPD and HPD policies to not enter

vehicles into the LEIN system by pointing to two Plaintiffs—Ashley Collins (whose car was towed

in Detroit) and Karen Abke (whose car was towed in Hamtramck)—who did not receive a Notice

of Abandoned Vehicle form.  Pl. CSOMF to Detroit's Mot. ¶ 40; Pl. CSOMF Hamtramck's Mot.

¶ 12.  But isolated incidents generally are not sufficient to show a municipal policy or custom

under Monell.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–824 (1985) ("Proof of a

---

[8] In puzzling concessions, Plaintiffs admit that it was DPD and HPD policy to enter vehicles into
LEIN.  See Pl. CSOMF to Detroit's Mot. ¶ 15; Pl. CSOMF to Hamtramck's Mot. ¶ 15.

single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").  Further, the fact that Collins and Abke did not receive Notice of Abandoned Vehicle forms does not show that their vehicles were not entered into LEIN.[9]

Second, as to HPD, Plaintiffs contend that Hamtramck "acknowledged to Plaintiffs that it had a policy of willfully refusing to enter the cars onto the LEIN system."  Pl. SOAF to Hamtramck's Mot. ¶ 11.  In support of this claim, Plaintiffs cite an email that they contend was sent from Hamtramck's former attorney to Plaintiffs' attorney.  <u>See</u> Email from Attorney (Dkt. 197-20).  But the Court cannot consider this email for multiple reasons.

The email is not authenticated, and no explanation of the context in which it was sent is offered.  It appears to be part of some informal exchange of information, but nothing of record establishes that.  The email copy supplied by Plaintiffs is cut off and not fully readable, so what it actually says is somewhat speculative.  While the email does include a statement that the authoring attorney believed some people whose vehicles were towed by Breakthrough did not receive notices, he does not say that it was the policy of Hamtramck not to enter any vehicles into LEIN; nor does the email give any timeframe for when this may have happened.  In addition, according to Hamtramck, the email was not sent by the City Attorney for Hamtramck, but rather "a counsel that was employed by a law firm that had a contract with the City of Hamtramck."  Hamtramck Reply at 3.  Hamtramck argues that the attorney "did not have decision making authority as a final

---

[9] As Detroit points out, there are multiple reasons why an individual might not receive a Notice of Abandoned Vehicle form, only one of which is that the towed vehicle was not entered into LEIN. <u>See</u> Br. Supp. Detroit Mot. at 36–38.  It is also possible that Breakthrough never informed the municipal Defendants of the tow to begin with, the Secretary of State failed to mail the notice, or the driver did not own the towed vehicle and the notice was sent to the registered owner instead.

policymaker" for Hamtramck and was not authorized to make an admission regarding policy on Hamtramck's behalf. Id.

Plaintiffs have offered nothing to counter this. And even though the email bears a date from 2019, there is no indication that a deposition of this attorney was ever conducted to develop actual evidence. Further, Plaintiffs offer no authority or theory under which the email might be admitted. It is not the Court's job to determine how it is or might be admissible. See United States v. Mungarro, No. 07-20076, 2020 WL 1933816, at *3 (E.D. Mich. Apr. 22, 2020) ("It is not the court's responsibility to craft winning legal arguments for [the parties].").

In contrast to Plaintiffs' failure to submit any meaningful evidence of a policy to not enter vehicles into LEIN, Hamtramck presents its own evidence that there is a policy of entering vehicles into LEIN. Amy Mervyn, a sergeant who serves as an HPD LEIN terminal agency coordinator and the HPD LEIN local agent security officer, testified regarding the notes prepared by the Michigan State Police for audits of HPD's LEIN entries from 2015 to the present. Mervyn testified that there were "no verbal or written notes . . . stating that HPD LEIN operators (i.e. dispatchers, officers, etc.) were erroneously inputting information into LEIN concerning private towing matters." Mervyn Aff. at PageID.3552 (Dkt. 194-21) (emphasis in original). LEIN audits occur every three years and consist of a review of a police agency's LEIN records for the full three-year period. Id.

Further, Plaintiffs do not dispute that it was HPD's standard procedure for the dispatcher on duty to enter a vehicle into LEIN and HPD's own document management system (CLEMIS) upon receipt of a tow slip from a tower in connection with a private tow. See Hamtramck SOMF ¶ 45; Pl. CSOMF to Hamtramck's Mot. ¶ 45. Andrew Robinson, a former HPD dispatcher and records clerk, testified that after a vehicle was entered into LEIN and CLEMIS by a dispatcher,

the records clerk also entered it into an "ease of use" Excel spreadsheet used internally by HPD. Robinson Dep. at 23 (Dkt. 197-3). This required the dispatcher to provide Robinson with a CLEMIS impound slip and a LEIN printout, which contained a LEIN number. Id. at 27–28, 55. Plaintiffs argue that Robinson, as the records clerk, "did not check to ensure that vehicles had, in fact, been entered into LEIN." Pl. CSOMF ¶ 14. But Robinson testified that the only way a LEIN printout could be generated is if a vehicle is entered into LEIN. Robinson Dep. at 55–56. It was, therefore, not necessary for Robinson to manually check the LEIN system to confirm that a vehicle had been entered; confirming the existence of a LEIN printout was enough. Robinson's testimony describes a clear policy of entering vehicles into LEIN and a built-in safeguard for ensuring that vehicles were entered through the records clerk's review of the LEIN printout.

In sum, Plaintiffs have failed to raise a genuine issue of material fact showing the existence of a policy of the sort they allege.

Plaintiffs also fail in their contention that DPD and HPD had policies of inadequate training or supervision regarding entering vehicles into LEIN. Plaintiffs offer no such evidence. DPD and HPD, on the other hand, offer sufficient evidence showing that it is their policy to train officers to enter vehicles into LEIN.

With respect to Detroit, Michael Parish, a captain who has overseen the DPD's role in private property impounds since 2016, testified that it has been DPD policy since before 2016 to enter all vehicles into LEIN after receiving notification from a private towing company that a vehicle is being towed. Parish Decl. at PageID.1238 (Dkt. 55-2). To show that DPD trains its officers on this policy, Detroit cites to DPD's "Standard Operating Procedures for Private Impounds," which state that "[a]ll private property impounds **must** be entered into the LEIN System within four (4) hours of impoundment." DPD SOPs at PageID.1315 (Dkt. 55-9) (emphasis

in original).  Detroit also cites to its police manual, which states that "[u]pon receiving notification from the towing agency that a vehicle is being towed . . . the police agency is required to . . . ensure the vehicle is entered into LEIN as an abandoned vehicle."  DPD Police Manual at PageID.1304 (Dkt. 55-8) (punctuation modified).

Hamtramck offered similar evidence showing that HPD trains its officers to enter vehicles into LEIN.  Robinson testified that all personnel who operate LEIN, including himself, receive initial LEIN training and then updated LEIN training through the Michigan State Police every three to four years.  Robinson Dep. at 11–13.  Further, the Hamtramck vehicle policy states that in the case of vehicles that are abandoned on private property without owner consent, a dispatcher "follows normal abandon procedure for LEIN entry" after receiving notice from a towing agency. HPD Vehicle Policy at PageID.3524 (Dkt. 194-19).

Courts often find that written policies suffice as evidence of policy and training.  See, e.g., Blake v. City of Lompoc, No. 16-cv-6095, 2017 WL 3275883, at *7 (C.D. Cal. June 29, 2017), report and recommendation adopted, 2017 WL 3269070 (C.D. Cal. July 31, 2017) (granting summary judgment to municipal defendants where police department's "custom" as alleged by plaintiffs conflicted with its "written policy manual"); Sanford v. Bunts, No. 14-cv-566, 2016 WL 11269315, at *11 (S.D. Ill. Dec. 19, 2016), at *11 report and recommendation adopted sub nom. Sanford v. Madison Cnty. Jail, No. 14-cv-566, 2017 WL 894474 (S.D. Ill. Mar. 7, 2017) (granting summary judgment to defendants on "failure to train" claim because there was no evidence that failure to follow a written manual was due to a lack of training).  Here, the DPD and HPD's written policies, in conjunction with the testimony of their officers, show that their officers are trained to enter vehicles into LEIN.

Lastly, even if Plaintiffs had shown that DPD and HPD officers were inadequately trained, they would still need to show that: (i) "the inadequacy was the result of the municipality's deliberate indifference" and (ii) "the inadequacy was closely related to or actually caused the injury." Mosier, 90 F.4th at 549 (punctuation modified).  Plaintiffs offer no evidence related to deliberate indifference or causation, so their failure to train claim fails for multiple reasons.

### 3.    Failure to Enforce Towing Disconnect Provision

The Michigan Vehicle Code states that in the case of a private tow, "if the owner or other person that is legally entitled to possess a vehicle to be towed or removed arrives at the location where the vehicle is located before the actual towing or removal of the vehicle, the vehicle must be disconnected from the tow truck, and the owner or other person that is legally entitled to possess the vehicle may take possession of the vehicle and remove it without interference . . . ."  Mich. Comp. L. § 257.252d(2).  In their complaint, Plaintiffs appeared to allege that Defendants violated their due process rights by failing to enforce this provision and "illegally prevent[ing] car owners from retrieving their cars before their cars were removed by Breakthrough."  2d Am. Compl. ¶ 10.

As with Plaintiffs' signage theory, Detroit and Hamtramck argue that Plaintiffs' disconnect theory fails because the municipal Defendants had no obligation under the Due Process Clause to prevent Plaintiffs from being harmed by third parties. See Br. Supp. Detroit Mot. at 22–23; Br. Supp. Hamtramck Mot. at 36.[10]  Plaintiffs do not address any arguments related to § 257.252d(2) in their responses, indicating that they have abandoned this theory.  See Davis v. Detroit Downtown Dev. Auth., No. 17-cv-11742, 2021 WL 4350533, at *4 n.4 (E.D. Mich. Sept. 24, 2021)

---

[10] Detroit and Hamtramck also argue that § 252.257(d)(2) does not apply to private property impounds.  See Br. Supp. Detroit Mot. at 27–29; Br. Supp. Hamtramck Mot. at 25–26.  Because the Court finds that the municipal Defendants did not violate Plaintiffs' due process rights by failing to enforce § 252.257(d)(2), it is not necessary for the Court to address this argument.

("In a variety of contexts, courts have construed silence by a civil litigant in the face of an argument made in the opposing party's motion as an abandonment or waiver of any challenge to it."); <u>Cruz v. Cap. One, N.A.</u>, 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016) ("A plaintiff abandons undefended claims.").

Regardless, Plaintiffs' disconnect theory fails for the same reason Plaintiffs' signage theory fails: the municipal Defendants had no obligation under the Due Process Clause to enforce the disconnect provision of the Michigan Vehicle Code so that Plaintiffs would not be harmed by third parties.

## C. Fourth Amendment Claim Against Municipal Defendants

Plaintiffs argue that the municipal Defendants violated their Fourth Amendment right to be free from unreasonable seizures by allowing Breakthrough to tow their vehicles in "reckless disregard" of the Michigan Vehicle Code. Pl. Resp. to Detroit Mot. at 28; Pl. Resp. to Hamtramck Mot. at 27–28. In support of their claim, Plaintiffs cite <u>Livingson v. Luken</u>, 151 F. App'x 470, 475 (6th Cir. 2005), in which the Sixth Circuit held that "a public official's seizure under the authority of the statute of an automobile that does not meet the statute's requirements for seizure would clearly be unreasonable for Fourth Amendment purposes." But Plaintiffs' reliance on that case is misguided. In <u>Livingston</u>, a police officer incorrectly stickered the plaintiff's car as "abandoned," which led to the car being towed. <u>Id.</u> at 474. Here, the police were not involved in the decision to tow any of the Plaintiffs' cars.

The Court declined to dismiss Plaintiffs' Fourth Amendment claims against the municipal Defendants at the motion to dismiss stage because Plaintiffs alleged that police officers arrived at the scene of ongoing tows and actively assisted Breakthrough in towing their cars. <u>See</u> <u>Robertson</u>, 2022 WL 4292314, at *15. Discovery has shown that these allegations are unsupported.

Robertson is the only Plaintiff who testified to officers being present while her car was being towed, and while the officers did not affirmatively stop Breakthrough from towing Robertson's car, they did not actively assist Breakthrough.  Robertson Dep. at 20–21, 24–25.

Plaintiffs also argue that the municipal Defendants assisted the tows by "authorizing" every tow before it occurred.  See Pl. Resp. to Detroit's Mot. at 28 ("Every tow done by Breakthrough required authorization via phone in Detroit before it was actually taken to the precinct, where Detroit further inspected the vehicle and received information regarding the tow."); Pl. Resp. to Hamtramck's Mot. at 30 ("Hamtramck . . . continued to authorize Breakthrough to tow each vehicle that came through their respective precincts prior to towing the vehicles from the City."). But as both municipal Defendants explained, their "authorization" is simply a confirmation that the vehicle has not been reported stolen, as required by the Michigan Vehicle Code.  See Detroit SOMF ¶ 14; Hamtramck Reply at 16; Mich. Comp. L. § 257.252a(11) ("Before removing the vehicle from private property, the towing agency shall provide notice . . . to a police agency . . . . Within 24 hours after receipt of the notice from the towing agency, the police agency shall determine if the vehicle has been reported stolen and enter the vehicle into [LEIN] as an abandoned vehicle.").

Plaintiffs have admitted as much, conceding that they "do not dispute that DPD requests private towing companies to contact DPD before performing private tows only so that DPD can determine if a vehicle is not stolen."  Pl. CSOMF to Detroit's Mot. ¶ 14.  Just because DPD and HPD officers are aware of a tow before it occurs for purposes of verifying that the vehicle has not

been reported stolen does not mean that they have "authorized" the tow in a way that can be interpreted as aiding or assisting Breakthrough.[11]

Plaintiffs' Fourth Amendment claims against the municipal Defendants must be dismissed because "[e]ven a wrongful search or seizure by a private party does not violate Fourth Amendment rights . . . ."  United States v Morgan, 744 F.2d 1215, 1218 (6th Cir. 1984).

### D.  Section 1983 Claims Against Breakthrough

Plaintiffs assert multiple constitutional claims against Breakthrough under 42 U.S.C. § 1983, but these claims fail because the Breakthrough entities are not state actors.  Private parties are liable under § 1983 only if they are "state actor[s]" that operated under "under color of law" such that their "private conduct is fairly attributable to the state."  Moldowan v. City of Warren, 578 F.3d 351, 399–400 (6th Cir. 2009) (punctuation modified).  There are four tests for determining whether private conduct is fairly attributable to the state: (i) the public function test, (ii) the state compulsion test, (iii) the nexus test, and (iv) the entwinement test.  See Bey v. LVN Corp., No. 14-13723, 2015 WL 4546752, at *4 (E.D. Mich. July 28, 2015) (citing Marie v. Am. Red Cross, 771 F.3d 344, 362 (6th Cir.2014)).[12]  Plaintiffs contend that both the nexus and state

---

[11] Relatedly, Plaintiffs argue that Detroit and Hamtramck authorized Breakthrough to tow vehicles even after Breakthrough lost its authority to tow.  Pl. Resp. to Detroit's Mot. at 35; Pl. Resp. to Hamtramck's Mot. at 37.  Plaintiffs fail to articulate how this alleged knowledge figures into their analysis.  Even if Detroit and Hamtramck officials knew that Breakthrough had lost its license, that does not substantiate a Monell claim under any theory. As explained above, neither the municipal Defendants nor any individual officer had to a duty to protect Plaintiffs from a legally invalid action of a private party that had lost its license.

[12] Private parties may also be liable under § 1983 if they "willfully participate in joint action with state agents" by joining a civil conspiracy with state officials.  Memphis, Tenn. Area Loc., Am. Postal Workers Union, AFL-CIO v. City of Memphis, 361 F.3d 898, 905 (6th Cir. 2004).  Plaintiffs mention this argument in their response to Breakthrough's motion but do not develop it or explain why it applies to this case.  See Pl. Resp. to Breakthrough Mot. at 28.  This passing reference to the conspiracy argument is precisely the sort of argument that courts deem waived.  See McPherson v. Kelsey, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner,

compulsion tests establish that Breakthrough acted under the color of law.  Pl. Resp. to Breakthrough Mot. at 28–32.  Plaintiffs also argue that Breakthrough acted under the color of law by "misusing the power granted to them under the authority of state law."  Id. at 28.  For the following reasons, these arguments fail.

### 1. Nexus Test

"Under the nexus test, there must be a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself."  Inner City Contracting, LLC v. Charter Twp. of Northville, 87 F.4th 743, 757 (6th Cir. 2023).  The test requires demonstrating more than "[m]ere cooperation"—for example, that the state "directed or otherwise ordered" the private party's actions.  Williams v. City of Detroit, No. 2:19-cv-12600-TGB, 2020 WL 4366073, at *5–*6 (E.D. Mich. July 30, 2020).  The burden is on Plaintiffs to show that the private actor meets the nexus test.  Inner City Contracting, 87 F.4th at 757.

Plaintiffs argue that the nexus test is satisfied, at least with respect to Hamtramck, because Hamtramck police officers arrived while Robertson's car was being towed and "repeatedly misinformed [] car owners" regarding their rights.[13]  Pl. Resp. to Breakthrough Mot. at 31.  But Plaintiffs do not argue that Hamtramck police officers directed or ordered any of the tows, including Robertson's.

---

unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (punctuation modified).  Further, there are no facts developed showing joint action.

[13] It is unclear whether Plaintiffs are referring to Hamtramck police officers misinforming Robertson or other car owners.  Without more specific details, this argument is insufficient.

Robertson testified that she and her friend Adam Soroka—who was with her when her car was towed—called the Hamtramck police themselves, and that two officers arrived at the scene shortly thereafter. Robertson Dep. at 20–21, 24–25 (Dkt. 197-6).  Robertson initially testified that the tow truck driver told her that the police department requested the tow, id. at 22, but she later clarified that the tow truck driver told her that CVS had requested the tow, not the police officers, and that she only assumed the police officers were involved because the tow truck driver said he would have to take the car to the police station before he took it to Breakthrough, id at 34–35. Robertson also testified that she did not witness the tow truck driver and the officers exchange any documentation or money.  Id. at 27.  According to Robertson, the Hamtramck police officers did not help her or take any affirmative steps to stop her car from being towed, id. at 24–25, but Robertson did not testify that the officers aided in the tow in any way.  The fact that police officers failed to prevent Robertson's tow does not establish a "sufficiently close" nexus between the Hamtramck officers and Breakthrough.

Plaintiffs make no specific arguments regarding a nexus between Detroit police officers and Breakthrough.  Plaintiffs argue generally that courts have found towing companies to act under color of law in certain situations and offer two examples.  First, Plaintiffs cite to two cases where private towing companies were found to have acted under color of law when "acting at the behest of a police officer and pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws."  Pl. Resp. to Breakthrough Mot. at 30–31 (citing Stypmann v. City and County of San Francisco, 557 F.2d 1338, 1338 (9th Cir. 1977); Goichman v. Rheuban Motors, Inc., 682 F.2d 1320, 1322 (9th Cir. 1982)).  Second, Plaintiffs point to a case where a private towing company was found to have acted under color of law when the company "acted upon the instruction of a police officer to impound a vehicle during an ongoing criminal

18

investigation."  Pl. Resp. to Breakthrough Mot. at 30–31 (citing Smith v. Insley's Inc., 499 F.3d 875, 880 (8th Cir. 2007)).  Neither situation applies here.

This case is more akin to Beyer v. Vill. of Ashwaubenon, 444 F. App'x 99, 101 (7th Cir. 2011), which Plaintiffs themselves cite as an example of a towing company not acting under color of law.  Pl. Resp. to Breakthrough Mot. at 30.  In Beyer, the Seventh Circuit held that "towing a car at the request of a private landowner" "falls far short" of state action, explaining that "when . . . the state has not compelled a private act—when the impetus and the actors remain private—there is no state action."  Id.  (punctuation modified).  Here, Plaintiffs do not contend that Hamtramck or Detroit compelled any of the tows in question.  Plaintiffs have failed to establish that the Breakthrough Defendants are state actors under the nexus test.

### 2.  State Compulsion Test

"The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state."  Memphis, Tenn. Area Loc., Am. Postal Workers Union, AFL-CIO, 361 F.3d at 905.  As with the nexus test, the burden is on Plaintiffs to show that the private actor meets the state compulsion test.  See Ellison v. Garbarino, 48 F.3d 192, 196 (6th Cir. 1995) (finding that the "plaintiff failed to meet his burden in regard to the three state action tests").

Plaintiffs argue that Hamtramck and Detroit encouraged Breakthrough's actions, at least covertly, by (i) allowing Breakthrough to tow in violation of the Michigan Vehicle Code, (ii) failing to enter the tows into LEIN, and (iii) preventing car owners from retrieving their cars before they were towed.  Pl. Resp. to Breakthrough Mot. at 31–32.  Plaintiffs point to the case of Abke specifically.  Id.  According to Plaintiffs, Abke's car was never entered into LEIN and she never received a Notice of Abandoned Vehicle form.  Id. at 33.

These arguments fail for multiple reasons.  First, failure to enforce provisions of the Michigan Vehicle Code is by no means encouragement of illegal tows.  The Supreme Court has long recognized that there is a "well established tradition of police discretion," <u>Town of Castle Rock v. Gonzales</u>, 545 U.S. 748, 760 (2005), and it would be nonsensical to argue that police officers encourage all crimes and civil violations committed when they fail to enforce laws.  Second, the municipal Defendants are responsible for entering a tow into LEIN <u>after</u> the car is towed; there is no logical way that failure to enter a car into LEIN could have encouraged the tow in the first place.  Lastly, as already discussed, the only particular instance of police involvement in a tow that Plaintiffs point to is that of Robertson, where the police officers on the scene failed to stop Robertson's tow but took no steps to encourage it.  Plaintiffs have failed to establish that the Breakthrough Defendants are state actors under the nexus test.

### 3.  Misuse of Power

In addition to discussing the well-established nexus and state-compulsion tests, Plaintiffs argue that Breakthrough acted under the color of law because it "abused the power and authority granted to [it] by state law."  Pl. Resp. to Breakthrough Mot. at 29.  Plaintiffs cite one case in support of their argument, <u>United States v. Classic</u>, 313 U.S. 299, 327 (1941).  In <u>Classic</u>, the Supreme Court held that five commissioners of elections acted under the color of state law when they falsified ballots cast in the Louisiana primary election.  <u>Classic</u>, 313 U.S. at 325–326.  The Supreme Court explained that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law."  <u>Classic</u>, 313 U.S. at 326 (punctuation modified).  But <u>Classic</u> is distinguishable from the case at hand.

Unlike in <u>Classic</u>, where the commissioners of elections were state officials, the Breakthrough entities are private actors.  While it is true that "[s]tate law grants licensed tow companies the right to tow vehicles from private lots," as Plaintiffs point out, Pl. Resp. to Breakthrough Mot. at 29, this is not akin to being a state official.  States grant licenses for all kinds of business activities, including haircutting, driving cars, selling prepared foods, and myriad other endeavors.  That does not convert every such licensee into a state actor.  Further, courts have long held that holding elections is one of "very few functions" that satisfy the public function test.  <u>See</u> <u>Inner City Contracting</u>, 87 F.4th at 757 (citing <u>Terry v. Adams</u>, 345 U.S. 461 (1953)).  To the extent a "misused of power" test may be available in other contexts, it is not applicable to the present context of private towing.

### E.  Civil Conspiracy and RICO Claims Against Breakthrough

Plaintiffs' complaint also brings civil conspiracy and RICO claims against Breakthrough. 2d Am. Compl. ¶¶ 271–285.  In their motion for summary judgment, Breakthrough argues that both claims should be dismissed because Plaintiffs have not offered specific evidence to support either claim.  Br. Supp. Breakthrough Mot. at 18–20.

Plaintiffs do not address Breakthrough's argument in their response; in fact, they do not mention their civil conspiracy or RICO claims at all.  <u>See</u> Pl. Resp. to Breakthrough Mot.  As explained above, Plaintiffs have therefore abandoned both claims against Breakthrough.

### F.  Dismissal of John Doe Defendants

Plaintiffs filed their complaint over five years ago.  Since that time, Plaintiffs have made no attempt to amend their complaint to identify any officer.  The 90-day window for service provided for in Fed. R. Civ. Pro. 4(m) has long passed, and Plaintiffs have had ample opportunity to conduct discovery.  The Court, therefore, dismisses the Defendant John Doe police officers

without prejudice.  See Petty v. Cnty. of Franklin, 478 F.3d 341, 345 (6th Cir. 2007) (affirming district court dismissal of John Doe defendants where plaintiff was "clearly in violation of . . . Rule 4(m)" and "was given ample time to figure out who [the John Does] might be"), abrogated on other grounds by Bailey v. City of Ann Arbor, 860 F.3d 382, 389 (6th Cir. 2017).

### G. Plaintiffs' Motion to Certify Class

Because the Court is dismissing all claims as to all Defendants, the Court denies Plaintiffs' motion to certify class as moot.

### III.    CONCLUSION

For the reasons explained above, the Court (i) grants the motions for summary judgment filed by Detroit (Dkt. 190), Hamtramck (Dkt. 193), and Breakthrough (Dkt. 203); (ii) dismisses all John Doe Defendants from the action; and (iii) denies the motion to certify class filed by Plaintiffs (Dkt. 197).

SO ORDERED.

Dated:  March 29, 2024                          s/Mark A. Goldsmith
        Detroit, Michigan                       MARK A. GOLDSMITH
                                                United States District Judge